UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X
                                             :

28th HIGHLINE ASSOCIATES, L.L.C.,         :
                                             :

               Plaintiff,         :

                                             :

        - against -           :   Case No. 18 Civ. 1468 (RWS)(KHP)

                                             :

IAIN ROACHE,                        :

                                             :

             Defendant.       :

                                             :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

 

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S
MOTION TO DISMISS THE COMPLAINT UNDER RULE 12(b)**

 

SMITH GAMBRELL & RUSSELL, LLP
1301 Avenue of the Americas, 21st Floor
New York, New York 10019
(212) 907-9700

*Attorneys for Defendant, Iain Roache*

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ....................................................................................1

BACKGROUND ........................................................................................................3

    A.    Sponsor Purports to Terminate and Sues under the Parties' Agreement ........................3

    B.    The "Notice" Provision of the Agreement Does Not Apply to Service of Process..........4

    C.    Mr. Roache Severs His Relationship with New York Closing Counsel ........................6

    D.    Sponsor's Ever-Changing Notion of How to Properly Serve Mr. Roache ......................7

    E.    Sponsor Concedes that Mr. Roache Must Be Served by "Other Means"........................8

ARGUMENT ...........................................................................................................10

    I.    This Case Should Be Dismissed under Rule 12(b)(4) and 12(b)(5) .................................10

        A.  Legal Standard ....................................................................................10

        B.  The Complaint Should Be Dismissed for Defective Process and
            Service of Process ................................................................................10

CONCLUSION.........................................................................................................17

SGR/18115766.1

# TABLE OF AUTHORITIES

Cases                                                                                                    Pages

*A.X.M.S. Corp. v. Friedman*,
   948 F. Supp. 2d 319 (S.D.N.Y. 2013) ...................................................................................11

*Anon Realty Assocs., L.P. v. Simmons Stanley Ltd.*,
   153 Misc.2d 954 (Sup. Ct. N.Y. Co. 1992) ..........................................................................13

*Continental Hosts v. Levine*,
   170 A.D.2d 430 (2d Dep't 1991) ...........................................................................................12

*Gibson, Dunn & Crutcher v. Global Nuclear Servs. & Supply*,
   280 A.D.2d 360 (1st Dep't 2001)............................................................................................16

*Hilaturas Miel, S.L. v. Republic of Iraq*,
   573 F. Supp. 2d 781 (S.D.N.Y. 2008) ...................................................................................10

*Jackson v. County of Nassau*,
   339 F. Supp. 2d 473 (E.D.N.Y. 2004)....................................................................................12

*Khan v. Khan*,
   360 Fed. Appx. 202 (2d Cir. 2010) ........................................................................................10

*Leab v. Streit*,
   584 F. Supp. 748 (S.D.N.Y. 1984) ........................................................................................12

*Maloney v. Braeside Apartments Co.*,
   193 A.D.2d 1112 (4th Dep't 1993) ........................................................................................12

*Optic Plus Enter. Ltd. v. Bausch & Lomb B.V. Netherlands*,
   2003 WL 25780846 (Sup. Ct. N.Y. Co. June 5, 2003) ..........................................................11

*Overseas Private Inv. Corp. v. Furman*,
   2012 WL 967458 (S.D.N.Y. 2012) ........................................................................................15

*TAGC Management, LLC v. Lehman*,
   842 F. Supp. 2d 575 (S.D.N.Y. 2012) .............................................................................13, 14

SGR/18115766.1

# <u>TABLE OF AUTHORITIES</u>

<u>Statutes & Rules</u>                                                                                     <u>Pages</u>

Fed. R. Civ. Proc. 12(b)(4) ...................................................................................1, 3, 10

Fed. R. Civ. Proc. 12(b)(5) ...................................................................................1, 3, 10

N.Y. C.P.L.R. § 308(2)........................................................................................2, 12

N.Y. C.P.L.R. § 308(6)........................................................................................12

SGR/18115766.1

Defendant Iain Roache, a U.K. citizen and resident of Gibraltar, respectfully moves to dismiss this action pursuant to Federal Rules of Civil Procedure 12(b)(4) and 12(b)(5).

## PRELIMINARY STATEMENT

This action arises out of an agreement to purchase a condominium unit in a newly-constructed building designed by famed architect, Zaha Hadid, located at 520 West 28th Street in Manhattan. By written notice dated January 24, 2018, the condominium sponsor and seller, 28th Highline Associates, L.L.C. ("Sponsor"), sent a "Notice of Termination of Agreement" to Mr. Roache, taking the position, *inter alia*, that Mr. Roache had allegedly defaulted under the parties' agreement and that Sponsor had elected to "cancel the Agreement" and retain Mr. Roache's sizeable down payment – a sum exceeding $2 million. The Notice of Termination further stated, *inter alia*, that "the Agreement shall be null and void and of no further force or effect." Sponsor is affiliated with the Related Companies, L.P., one of the largest real estate development firms in the country with total assets of approximately $50 billion.

Following Sponsor's purported cancellation of the parties' agreement,[1] and stated desire to retain Mr. Roache's very considerable contract deposit, the parties engaged in settlement negotiations through their respective counsel. During a recent call to discuss settlement in February 2018, Mr. Roache was represented by his counsel in the United Kingdom, and the Sponsor was represented by the same attorneys who are acting as the escrow agent under the parties' agreement. Despite Sponsor's stated desire during the call to continue the parties' settlement discussions, Sponsor abruptly changed its position and filed this action, just a week later, with aid of new counsel.

---

[1] For the avoidance of doubt, Mr. Roache does not take the position or concede that Sponsor's purported "cancellation" of the parties' agreement was warranted, proper or effective.

SGR/18115766.1

However, in its rush to the courthouse, Sponsor has chosen not to carry out service of process on Mr. Roache – a U.K. citizen and resident of Gibraltar – through the Hague Convention, as it is required to do. Instead, Sponsor's new counsel has taken the position that Mr. Roache can be served "care of" the attorney who had formerly represented him with respect to the parties' agreement, pursuant to the ordinary "notices" provision of the agreement.

The obvious flaw in Sponsor's position is that the "notices" provision of the agreement makes no reference to "service of process," unlike other provisions of the agreement. Further, Mr. Roache's working relationship with his former New York closing counsel, Mr. Jesse Gordon, had ended well before Sponsor attempted to serve Mr. Roache by leaving process with the receptionist at Mr. Gordon's office. Thus, the office of Mr. Roache's *former* New York counsel does not qualify as Mr. Roache's "actual place of business" under N.Y. C.P.L.R. § 308(2).

Sponsor's new counsel is acutely aware of the fact that Mr. Roache cannot be served at the office of his former New York closing attorney under the "notices" provision of the agreement. It is for that reason that Sponsor's counsel repeatedly asked Mr. Roache's litigation counsel -- Smith, Gambrell & Russell, LLP ("SGR") -- to accept service of the summons and complaint. And if SGR could not accept service of process, Sponsor's counsel indicated that she would serve Mr. Roache through "C.T. Corporation," pursuant to another provision of the agreement -- not at the office of Mr. Roache's former closing counsel.

Then, Sponsor's counsel shifted gears and requested an Amended Summons to serve Mr. Roache "care of" Mr. Gordon, Mr. Roache's former closing attorney under the agreement. As a tacit concession that this manner of service would be ineffective, Sponsor's counsel asked SGR to "consent" to such service. When SGR informed Sponsor's counsel that it would not consent

2

to such improper service, Sponsor's counsel stated that she would "*have to*" serve Mr. Roache by "other means" – presumably a reference to the Hague Convention.

However, instead of serving Mr. Roache through the Hague Convention, Sponsor is seemingly content to learn whether this Court will sanction what Sponsor acknowledges is improper service of process. Thus, for these reasons, and the reasons set forth below, the Complaint should be dismissed under Fed. R. Civ. P. 12(b)(4) and 12(b)(5).

## BACKGROUND

The facts upon which this motion is based are contained in the accompanying Declarations of Michael P. Regan ("Regan Decl."), Iain Roache ("Roache Decl."), Jesse Gordon ("Gordon Decl."), and the exhibits annexed to each declaration, including the Complaint and its own exhibits.

**A.      Sponsor Purports to Terminate and Sues under the Parties' Agreement**

On or about December 22, 2015, Mr. Roache, as buyer, as Sponsor, as seller, entered into a written agreement (the "Agreement") with respect to the purchase and sale of a condominium unit in a new residential building being constructed at 520 West 28th Street in Manhattan. (*See* Regan Decl., Ex. C, Doc. 1-1). Mr. Roache is a citizen of the United Kingdom and resides in Gibraltar. (Roache Decl., ¶ 1).

Pursuant to the Agreement, Mr. Roache placed approximately $2.1 million in escrow as a deposit for the purchase of the condominium unit. (Regan Decl., Ex. C, Doc. 1-1, ¶ 3). Sponsor later took the position that Mr. Roache had defaulted under the Agreement, and sent a "Notice of Termination of Agreement" to Mr. Roache dated January 24, 2018. (Regan Decl., Ex. A).

Pursuant to the Notice of Termination, Sponsor asserted, *inter alia*, that it had "elect[ed] to cancel the Agreement" and that, thereafter, the "Agreement shall be null and void and of no

3

further force or effect." (Regan Decl., Ex. A). The Notice of Termination further stated, *inter alia*, that Sponsor had decided to enforce its right to "retain the entire $2,113,000.00 down payment," based on its purported election to cancel the Agreement. (*Id.*).

In the Complaint, Sponsor asserts two causes of action, one for breach of contract and the other for declaratory judgment. (*See* Regan Decl., Ex. C, Doc. 1, pp. 9-11). The breach of contract claim asserts, *inter alia*, that Mr. Roache had defaulted under the Agreement, that Sponsor had "elected to cancel" the Agreement, and that Sponsor is entitled to the deposit as liquidated damages. (*Id.*, ¶¶ 58, 60-61). The declaratory judgment claim is predicated on the same factual allegations – including "cancellation" of the Agreement. (*Id.*, ¶¶ 63-69).

## B.     The "Notice" Provision of the Agreement Does Not Apply to Service of Process

Article 25 of the Agreement does not apply to service of process. Indeed, whereas Article 25 makes no mention of service of "process," that precise language is found in other provisions of the Agreement.

Article 25 ("Notices") of the Agreement provides as follows:

25.1   Any notice, election, demand, consent, request or other communication hereunder or under the [Offering] Plan shall be in writing and either delivered in person or sent, postage prepaid, by registered or certified mail, return receipt requested or by Federal Express or other reputable overnight carrier with receipt confirmed: to Purchaser at the address given at the beginning of this Agreement [c/o Jesse Gordon, Esq., Costello & Gordon, LLP, 1790 Broadway, Suite 710, New York, New York 10019]; and to Sponsor, addressed to Selling Agent at: Related Sales LLC, 60 Columbus Circle, 20th Floor, New York, New York 10023, with a copy sent simultaneously and in like manner to Levitt & Boccio, LLP, 60 Columbus Circle, 20th Floor, New York, New York 10023, Attention: Jeffrey A. Levitt, Esq. Either party may thereafter designate to the other in writing a change in the address to which notices are to be sent. Except as otherwise expressly provided herein, a notice shall be deemed given when personal delivery or delivery by overnight courier is effected or, in the case of mailing, three (3) days after the date of mailing, except that the date of actual receipt shall be deemed to be the date of the giving of any notice of change of address.

25.2   Sponsor hereby designates and empowers both Selling Agent and Sponsor's closing counsel (Levitt & Boccio, LLP) as Sponsor's agents to give any notice to Purchaser

4

under this Agreement (including, without limitation, a notice of default) in Sponsor's name, which notice so given shall have the same force and effect as if given by Sponsor itself.

(Regan Decl., Ex. C, Doc. 1-1, pp. 14-15).

No mention is made in Article 25 of the Agreement to service of "process." On the other hand, Article 37.7 of the Agreement states, *inter alia*, that the Purchaser under the Agreement shall designate C.T. Corporation System "as its duly authorized and lawful agent to *receive process* . . . in any state or Federal suit, action or proceeding in the State of New York based on, arising out of or connected with this Agreement," if the Purchaser is a "foreign government, a resident representative of a foreign government or such other person or entity otherwise entitled to the immunities from suit enjoyed by a foreign government . . . ." (emphasis added).

Thus, when the parties wished to invoke the concept of serving and receiving "*process*," they chose to use that precise term in other provisions of the Agreement. However, that language was deliberately not inserted into Article 25 of the Agreement. Thus, it is abundantly clear that the parties did not intend for Article 25 to apply to service of process.

Further, Article 25 does not state that it survives termination of the Agreement. In contrast, several of the Agreement's provisions expressly state that they survive its termination. Articles 7.3, 8.6, 9, 20, 22, 33.4, 35 and 36 all expressly state that they survive termination of the Agreement. (*See*, Regan Decl., Ex. C, Doc. 1-1).

The omission of such language from Article 25 was not a mistake; rather, the omission was clearly deliberate. And the omission of that language reflects the fact that the parties understood that Article 25 of the Agreement dealt with ordinary notices while the Agreement was still active, not service of process after termination of the Agreement.

5

**C.     Mr. Roache Severs His Relationship with New York Closing Counsel**

Mr. Jesse Gordon formerly served as Mr. Roache's closing counsel under the Agreement. (Roache Decl., ¶ 4; Gordon Decl., ¶ 5).

By letter dated July 18, 2017, Mr. Gordon sent a notice to Sponsor's agent to adjourn the closing to a mutually-agreeable date and time, no later than August 23, 2017.  (Regan Decl., Ex. C, Doc. 1-4).  It is not indicated in the Complaint that such a date was ever scheduled, or that Sponsor was ready, willing and able to close by August 23, 2017.  By letter dated November 9, 2017, Sponsor sent a purported "Notice of Default" to Mr. Roache, based on Mr. Roache's purported "failure to close title" about three months earlier.  (Regan Decl., Ex. C, Doc. 1-5).

In January 2018, Sponsor sent a "Notice of Termination" of the Agreement to Mr. Gordon, as closing counsel for Mr. Roache under the Agreement.  (*See* Regan Decl., Ex. A; Gordon Decl., ¶ 6).  After receiving the purported "Notice of Termination," Mr. Gordon reached out to Mr. Roache about responding to Sponsor's communication.  (Gordon Decl., ¶ 7).

Mr. Gordon then spoke to SGR's litigation counsel, and learned that SGR would be replacing him as Mr. Roache's counsel in the dispute with the Sponsor.  (Regan Decl., ¶ 4; Gordon Decl., ¶ 8).   Mr. Roache confirmed with Mr. Gordon, in an email communication sent on February 2, 2018, that SGR was replacing Mr. Gordon as Mr. Roache's counsel in this matter. (Roache Decl., Ex. A; Gordon Decl., ¶ 9).

A month later, on or about March 2, 2018, Sponsor sent a process server to Mr. Gordon's office in New York and attempted to serve the summons and complaint there.  (Gordon Decl., ¶ 15).  By virtue of the fact that he no longer represents Mr. Roache, Mr. Gordon declined to accept service of the summons and complaint, and thereafter instructed his staff not to accept service.  (Gordon Decl., ¶¶ 15, 17).

SGR/18115766.1

On March 5, 2018, Mr. Gordon received an email from Mr. Roache's U.K. counsel, Mr. Vivian Haines, reiterating to Mr. Gordon that he does not have authority to accept service of the summons and complaint, that his relationship with Mr. Roache had come to an end, and that he should transfer his entire file to SGR. (Gordon Decl., Ex. B). The next day, March 6, 2018, a process server returned to Mr. Gordon's office and purportedly left a copy of the amended summons and complaint with a receptionist. (Gordon Decl., ¶ 18; Regan Decl., Ex. K).

**D. Sponsor's Ever-Changing Notion of How to Properly Serve Mr. Roache**

Sponsor's latest position that it can serve Mr. Roache through the office of his former closing counsel in New York runs counter to Sponsor's own words and conduct prior to that attempted service.

Immediately after filing this action, Sponsor's counsel reached out to SGR, on February 20, 2018, to ask whether SGR would accept service of the summons and complaint on behalf of Mr. Roache. (Regan Decl., Ex. F). In the email, Sponsor's counsel stated that she would serve Mr. Roache through "C.T. Corporation" if SGR did not accept service. (*Id.*). Sponsor's counsel made no mention of serving Mr. Roache at Mr. Gordon's office.

About ten days later, Sponsor sent a process server to SGR's office to serve SGR with the summons and complaint, on behalf of Mr. Roache. (Regan Decl., ¶ 10). If Sponsor truly believed that it could serve Mr. Roache at Mr. Gordon's office, it makes very little sense that Sponsor would first send a process server to SGR's New York office in an attempt to serve Mr. Roache there.

Upon being informed that SGR could not accept service of the summons and complaint (Regan Decl., Ex. G), Sponsor obtained an amended summons to serve Mr. Roache "c/o Jesse Gordon, Esq., Costello & Gordon, LLP, 1790 Broadway, Suite 710, New York, New York

SGR/18115766.1

"10019." (Regan Decl., Ex. I). After Sponsor's process server purportedly left the amended summons and complaint with a receptionist at Mr. Gordon's office, Sponsor's counsel reached out to SGR to inquire whether SGR would "consent" to service of Mr. Roache in this manner. (Regan Decl., Ex. L).

If Sponsor truly believed that service of the amended summons and complaint at Mr. Gordon's office was effective and proper, there would have been no need to reach out to Mr. Roache's counsel for its "consent" to such service. And, in fact, SGR did not consent to this improper and ineffective attempt at "service." (Regan Decl., Ex. L).

**E.**     **Sponsor Concedes that Mr. Roache Must Be Served by "Other Means"**

As reflected in the email correspondence between counsel for Sponsor and Mr. Roache, Sponsor's counsel indicated on two occasions -- on March 8, 2017 and March 10, 2017 -- that Mr. Roache must be served "by other means," in the event that SGR would not consent to the improper attempt at service of Mr. Roache through Mr. Gordon. (Regan Decl., Ex. L).

In fact, Sponsor's counsel stated, *inter alia*, the following in her email sent to Mr. Roache's counsel on March 10: "By asking for your consent, we meant only to obtain your assurance that you would not object to [service at Mr. Gordon's office], *such that we could avoid the undue expense of our having to serve him by other means*." (*Id.*) (emphasis added).

Sponsor's counsel's email sent on March 10th is a clear admission that the attempted service of Mr. Roache, through Mr. Gordon's office, was improper and ineffective. If it were effective, Sponsor would obviously not need our "consent" to the attempted service. And, moreover, Sponsor's counsel acknowledged that *but for* Mr. Roache's consent to such improper service, Sponsor would "*have to*" serve Mr. Roache by "other means." This email from

8

Sponsor's counsel is a clear admission that the attempted service of Mr. Roache, at Mr. Gordon's office, is ineffective and of no force and effect.

Sponsor's counsel's reference to "other means" is no doubt a reference to service through the Hague Service Convention, given that Mr. Roache is a resident of Gibraltar, a U.K. territory. The Court may take judicial notice that Gibraltar is a party to the Hague Service Convention. (https://en.wikipedia.org/wiki/Category:Treaties_extended_to_Gibraltar). After receiving the email from Sponsor's counsel on March 10th, we fully expected Sponsor to make the necessary arrangements to serve Mr. Roache through the Hague Service Convention. Instead, Sponsor seems content to learn whether this Court will countenance what its own lawyer acknowledges to be improper service. As a result, Mr. Roache was forced to file this motion.

SGR/18115766.1

# ARGUMENT

## I.

## This Case Should Be Dismissed Under Rule 12(b)(4) and Rule 12(b)(5)

It is respectfully submitted that the Complaint should be dismissed under Federal Rules of Civil Procedure 12(b)(4) and 12(b)(5).

### A. Legal Standard

Objections to sufficiency of process itself under Rule 12(b)(4) must identify substantive deficiencies in the summons, complaint or accompanying documentation. *See, e.g., Hilaturas Miel, S.L. v. Republic of Iraq*, 573 F. Supp. 2d 781, 796 (S.D.N.Y. 2008) (Sweet, J.) (process served on Iraqi government was defective).

On a 12(b)(5) motion asserting insufficient service of process, "plaintiff bears the burden of proving adequate service of process, and a Court must look to matters outside the complaint to determine whether it has jurisdiction." *Hilaturas Miel, S.L*, 573 F.Supp.2d at 795; *see also, Khan v. Khan*, 360 Fed. Appx. 202, 203 (2d Cir. 2010) (affirming dismissal of the complaint for insufficient service of process).

### B. The Complaint Should be Dismissed for Defective Process and Service of Process

In email correspondence from Sponsor's counsel to Mr. Roache's counsel, sent on March 10th, Sponsor took the position that service of process on Mr. Roache -- through the office of his former closing counsel -- was "proper under the contract." (Regan Decl., Ex. L). For the reasons set forth below, Sponsor cannot rely on Article 25 of the Agreement to serve process on Mr. Roache at the office of his former closing attorney in New York.

To state what is obvious from reading its plain terms, Article 25 of the Agreement has no application to service of "process." Article 25 of the Agreement is a customary "notice"

10

provision that applies to ordinary notices and communications, not service of "process." *See, e.g., Optic Plus Enter. Ltd. v. Bausch & Lomb B.V. Netherlands*, 2003 WL 25780846 (Sup. Ct. N.Y. Co. June 5, 2003) (Lowe, J.) (dismissing the complaint).

To avoid any doubt that Article 25 has no application to service of process, it must be noted that other provisions of the Agreement expressly deal with service of "process." Article 37.7 of the Agreement states, *inter alia*, that the Purchaser under the Agreement shall designate C.T. Corporation System "as its duly authorized and lawful agent to *receive process* . . . in any state or Federal suit, action or proceeding in the State of New York based on, arising out of or connected with this Agreement," if the Purchaser is a "foreign government, a resident representative of a foreign government or such other person or entity otherwise entitled to the immunities from suit enjoyed by a foreign government . . . ." (emphasis added).

Thus, when the parties wished to invoke the concept of serving and receiving "*process*," they chose to use that precise term in other provisions of the Agreement. However, that language was deliberately not inserted into Article 25 of the Agreement. Thus, it is clear that the parties did not intend for Article 25 to apply to service of process. It is well settled that courts construe contracts according to the parties' intent as derived from the contract's clear and unambiguous terms, by reading the contract as a whole, and by giving full meaning and effect to all of the contract's provisions. *See, e.g., A.X.M.S. Corp. v. Friedman*, 948 F. Supp. 2d 319, 332 (S.D.N.Y. 2013).

And, unlike other provisions of the Agreement, Article 25 does not, by its terms, survive termination of the Agreement. (*Compare* Articles 7.3, 8.6, 9, 20, 22, 33.4, 35 and 36, at Regan Decl., Ex. C, Doc. 1-1). The omission of survival language from Article 25 reflects the fact that

11

the parties understood that Article 25 dealt with ordinary "notices," while the Agreement was still active, and not service of process after termination of the Agreement.

In any event, despite the fact that Article 25 has no application to service of process, Sponsor appears to be arguing that Mr. Gordon's office, as referred to in Article 25, qualifies as Mr. Roache's "actual place of business" for purposes of service of process under N.Y. C.P.L.R. §§ 308(2) and (6). The evidentiary record on this motion clearly establishes that Mr. Gordon's law office in New York does not qualify as Mr. Roache's "actual place of business."

A person's "actual place of business" is his or her business address *at the time of the attempted service*, not when the cause of action arose. *See Jackson v. County of Nassau*, 339 F. Supp. 2d 473, 478 (E.D.N.Y. 2004). Accordingly, it is well settled that service at a purported "actual place of business" fails where the party to be served no longer has an affiliation at the address where service was attempted. *See, e.g., Jackson*, 339 F. Supp. 2d at 478 (party to be served was no longer employed at the medical center at time of attempted service); *Leab v. Streit*, 584 F. Supp. 748, 760 (S.D.N.Y. 1984) (defendant submitted credible evidence that he did not work at company at time of purported service); *Continental Hosts v. Levine*, 170 A.D.2d 430, 430 (2d Dep't 1991) (location was not defendant's "actual place of business" because he had already sold his practice and vacated the office); *Maloney v. Braeside Apartments Co.*, 193 A.D.2d 1112, 1113 (4th Dep't 1993) (delivery of summons and complaint to former place of business insufficient service of process).

Here, the evidentiary record clearly establishes that Mr. Gordon's law office – if that location, for the sake of argument, could even be described as Mr. Roache's "place of business" – was no longer acting as Mr. Roache's counsel as of March 6, 2018, the time of the attempted service of process. In fact, Mr. Gordon was notified by Mr. Roache's new counsel, on January

12

26, 2018, that SGR would now be representing Mr. Roache's interests in this matter. (Regan Decl., ¶ 4).

To make crystal clear that Mr. Gordon would no longer be serving as Mr. Roache's counsel, Mr. Roache confirmed to Mr. Gordon, in email correspondence sent on February 2, 2018, that SGR would now be "representing [his] interests moving forward." (Roache Decl., Ex. A). And on March 5, 2018, the day before service was attempted at Mr. Gordon's office, Mr. Gordon received an email from Mr. Roache's U.K. counsel, Mr. Vivian Haines, to reiterate that Mr. Gordon no longer represented Mr. Roache, was not authorized to accept service of process, and should transfer his entire file to Mr. Roache's new counsel in New York. (Gordon Decl., Ex. B).

Further, putting aside the clear record establishing that Mr. Roache's relationship with Mr. Gordon had terminated before the attempted service at Mr. Gordon's office, the attempted service also fails because Mr. Gordon's office does not qualify as Mr. Roache's "actual place of business." Under New York law, an "actual place of business" includes any location that the defendant "through regular solicitation or advertisement, has held out as its place of business." *TAGC Mgmt., LLC v. Lehman*, 842 F. Supp. 2d 575, 582 (S.D.N.Y. 2012) (defendants' sworn affidavits established that their actual place of business was in Bejing, China, not in New York); *see also, Anon Realty Assocs., L.P. v. Simmons Stanley Ltd.*, 153 Misc. 2d 954, 957 (Sup. Ct. N.Y. Co. 1992) (Cahn, J.) (defendants actually and regularly conduct their business "thousands of miles away in California").

Here, Mr. Roache's declaration establishes that his "actual place of business," as Chairman of Domain Venture Partners, is located at Leisure Island Business Center, Ocean Village, in Gibraltar, which is located about 3,642 miles from New York City across the Atlantic

SGR/18115766.1

Ocean. (Roache Decl., ¶ 11). Mr. Roache runs a structured investment fund for experienced investors. (Roache Decl., ¶ 12; http://www.domainventurepartners.net/domain/).

Mr. Gordon does not, and has never served as, Mr. Roache's full-time business lawyer. (Roache Decl., ¶ 13; Gordon Decl., ¶ 13). Mr. Gordon is a real estate attorney and his engagement was limited to serving as closing counsel with respect to a real estate transaction in New York that did not close. (Roache Decl., ¶ 14; Gordon Decl., ¶¶ 5-6). Rather, Mr. Vivian Haines of Stonehage Fleming Law Limited, an attorney located in London, generally advises Mr. Roache on his legal matters. (Roache Decl., ¶ 15). Mr. Roache has not been in contact with Mr. Gordon since February 2, 2018, when he advised Mr. Gordon, in writing, that he would no longer be serving as his New York counsel, and that he had engaged new counsel for that purpose. (Roache Decl., Ex. A and ¶¶ 7-10; Gordon Decl., ¶¶ 9-12).

Although an "actual place of business" may be found to exist where the defendant induced the plaintiff to reasonably rely on that location (*see TAGC Mgmt., LLC,* 842 F. Supp. 2d at 583), no such reliance can be established here with respect to attempted service at Mr. Gordon's office. As set forth above, Article 25 of the Agreement is clearly limited to ordinary "notices" between the parties and does not extend to *service of process*. Sponsor, as a sophisticated party with aid of sophisticated counsel, should be well aware of the provisions of its own contracts. If Sponsor wanted the right to serve process on Mr. Roache through Mr. Gordon's law office in New York, it should have used its considerable bargaining power and legal support to negotiate for such a right in the parties' contract.

Moreover, Sponsor has acknowledged, through its actions and words, that it does not believe service through Mr. Gordon's office to be valid. First, Sponsor's counsel attempted to serve process on Mr. Roache's new litigation counsel, SGR. Then, Sponsor's counsel sought the

14

SGR/18115766.1

"consent" of Mr. Roache's new litigation counsel with respect to the attempted service at Mr. Gordon's office. And, finally, Sponsor's counsel acknowledged that Mr. Roache would "have to" be served "by other means" – no doubt a reference to the Hague Convention – unless she obtained Mr. Roache's consent to the improper service at Mr. Gordon's office. (Regan Decl., Ex. L).

Accordingly, for the foregoing reasons, the amended summons is defective, on its face, because it improperly seeks to serve Mr. Roache at Mr. Gordon's office in New York. And service was improper, because Sponsor sent a process server to Mr. Gordon's office in an attempt to carry out service there.

Sponsor's reliance on the Court's decision in *Overseas Private Inv. Corp. v. Furman*, 2012 WL 967458 (S.D.N.Y. 2012) is misplaced. In that case, the defendant provided an address in Florida as his actual place of business for purposes of a guaranty, and the Court found that to be "prima facie" evidence of the guarantor's actual place of business. *Overseas Private Inv. Corp.*, 2012 WL 967458, at *6. Here, the address at issue is the office of a former attorney located in a different country, on the other side of the world, as opposed to the defendant's own business office. Further, we have provided a clear evidentiary record establishing that Mr. Gordon's office has never served as Mr. Roache's general business office and, moreover, the relationship between Mr. Gordon and Mr. Roache was severed at least a month prior to the attempted service. No such facts exist in *Overseas Private Inv. Corp.* Any presumption that Mr. Gordon's office constitutes Mr. Roache's "place of business" has been rebutted. Thus, the facts of this case are completely different and the holding of *Overseas Private Inv. Corp.* has no application here.

15

Likewise, in *Gibson, Dunn & Crutcher v. Global Nuclear Servs. & Supply*, 280 A.D.2d 360 (1st Dep't 2001), there was an extensive evidentiary record establishing that the defendant had very significant and ongoing business interests at the location where process was served. *See id.*, at 361. Again, the evidentiary record in this case is completely different and necessitates the finding that Mr. Gordon's office cannot qualify as Mr. Roache's "actual place of business" as of March 6, 2018.

Although granting this motion will likely not dispose of the parties' dispute, it is nevertheless very important to Mr. Roache. After all, this is a contract dispute and Sponsor is coming into court ostensibly to enforce the terms of the parties' contract. Sponsor does not get to pick and choose which contractual provisions to adhere to, and which ones to ignore. The parties' agreement does not permit Sponsor to serve Mr. Roache with process through Mr. Roache's former closing attorney. If Sponsor wanted that right, it should have obtained it at the bargaining table. Conversely, Sponsor's obligation to serve Mr. Roache through the Hague Convention should be viewed as a victory that his lawyer obtained at the bargaining table.

As for the merits, Mr. Roache vehemently disagrees with Sponsor's position that he "defaulted" under the parties' agreement and, should it be necessary, Mr. Roache is fully prepared to litigate and prevail in this case. However, Mr. Roache was led to believe that Sponsor wished to resolve this dispute outside of court. (*See* Roache Decl., ¶ 17). Instead, Sponsor abruptly changed its mind and filed this action, seeking to claim entitlement to $2 million of Mr. Roache's hard-earned money.

If Sponsor wishes to spend its time and considerable financial resources attempting to carry out improper service of process, instead of focusing on resolving the parties' dispute, that

16

is Sponsor's prerogative.  And if Sponsor wishes to carry out *proper* service of process on Mr.

Roache, it will have to go through the appropriate international channels.

## <u>CONCLUSION</u>

For the reasons set forth in this memorandum of law and the accompanying motion papers, Defendant, Iain Roache, respectfully requests that the Court grant his motion to dismiss the Complaint.

Dated: March 27, 2018

SMITH, GAMBRELL & RUSSELL, LLP


By: _____/s/ Michael P. Regan_____
          Michael P. Regan (MR-1500)

1301 Avenue of the Americas, 21st Floor
New York, New York 10019
Tel: (212) 907-9700
Fax: (212) 907-9800
mregan@sgrlaw.com

*Attorneys for Defendant, Iain Roache*

SGR/18115766.1