UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

28TH HIGHLINE ASSOCIATES, L.L.C.,

                Plaintiff,

        - against -

IAIN ROACHE,

                Defendant.

Case No.: 18-CV-1468 (RWS)

---

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR JUDGMENT ON THE PLEADINGS

Dated: May 25, 2018

CLARICK GUERON REISBAUM LLP

Emily Reisbaum
Nicole Gueron
Ashleigh Hunt
220 Fifth Avenue, 14th Floor
New York, NY 10001
Phone: (212) 633-4310
Fax: (646) 478-9484

*Attorneys for Plaintiff 28th Highline Associates, L.L.C.*

## **Table of Contents**

Table of Authorities .................................................................................................. ii

Preliminary Statement............................................................................................... 1

Factual and Procedural Background ......................................................................... 2

1. In 2015, Defendant Agrees to Purchase A Luxury Apartment and Other Property from Plaintiff .................................................................................................. 2

2. Defendant Breaches the Agreement by Failing to Timely Close ...................... 6

3. Plaintiff Informs Defendant That it Will Terminate the Agreement, and Defendant Wrongfully Instructs the Escrow Agent to Not Release the Deposit................................. 9

4. This Action Commences and the Pleadings Close ........................................... 10

Argument ................................................................................................................ 10

I.    Legal Standard and Summary of Argument ....................................... 10

II.   Plaintiff is Entitled to Judgment on Its Claims for Breach of Contract and Declaratory Judgment ........................................................................ 12

a.   The Agreement Controls And Is Unambiguous:  If Defendant Fails To Close, He Forfeits The Deposit............................................................. 13

b.   Defendant Forfeited The Deposit by Failing To Close.................................. 15

III.  Defendant Does Not and Cannot Lay Blame With Plaintiff, Entitleing Plaintiff to Judgment on the Counterclaims.............................................................. 16

a.   Defendant Fails to State a Claim of Anticipartory Repudiation ................... 16

b.   Defendant Cannot State a Claim for Fraudulent Inducement........................ 19

IV.   Only Plaintiff is Entitled to Declaratory Relief ................................. 22

V.    Plaintiff Should be Awarded Attorneys' Fees and Costs .................... 24

Conclusion .............................................................................................................. 25

## Table of Authorities

**Cases**

*Aetna Cas and Sur Co. v. Aniero Concrete Co., Inc.*,
   404 F.3d 566 (2nd Cir. 2005)........................................................................ 12, 19

*Armas v. Yuska*,
   768 N.Y.S.2d 641 (2nd Dep't 2003) .................................................................. 15

*Ashcroft v. Iqbal*,
   556 U.S. 622 (2009).......................................................................................... 11

*Badame v. Bock Enters., Inc.*,
   593 N.Y.S.2d 384 (4th Dep't 1993).............................................................. 15, 16

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007).......................................................................................... 11

*Bolt Elec., Inc. v. City of New York*,
   223 F.3d 146(2d Cir. 2000).............................................................................. 14

*Chateau D'If Corp. v. City of New York*,
   641 N.Y.S.2d 252.............................................................................................. 15

*Chatsworth Realty 344 LLC. v. Hudson Waterfront Co. A, LLC.*,
   Index No. 10999/2002, 2003 WL 1085888 (N.Y. Sup. Mar. 4, 2003)................ 18

*Citibank, N.A. v. Plapinger*,
   495 N.Y.S.2d 309 (1985).................................................................................. 20

*Cohen v. Koenig*,
   25 F.3d 1168 (2d Cir. 1994).............................................................................. 20

*Collar City Partnership v. Redemption Church*,
   651 N.Y.S.2d 729 (3rd Dep't)........................................................................... 15

*Danann Realty Corp. v. Harris*,
   184 N.Y.S. 2d 597 (1959)................................................................................. 19

*DDJ Mgmt., LLC v. Rhone Grp. L.L.C.*,
   905 N.Y.S.2d 118, 15 N.Y.3d 147 (2010) ........................................................ 21

*De Forest Radio Tel. & Tel. Co. v. Triangle Radio Supply*,
   243 N.Y. 283, 153 N.E. 75 (1926)................................................................... 17

*DiFolco v. MSNBC Cable L.L.C.*,
    831 F. Supp. 2d 634 (S.D.N.Y. 2011)..................................................... 12, 16, 17

*Dow Jones & Co. v. Harrods Ltd.*,
    346 F.3d 357 (2d Cir. 2003)................................................................. 22, 23

*Fischer & Mandell, LLP v. Citibank, N.A.*,
    632 F.3d 793 (2d Cir. 2011)...................................................................... 11

*Graham Court Owner's Corp. v. Taylor*,
    24 N.Y.3d 742 (2015) ............................................................................... 24

*Greenfield v. Philles Records*,
    98 N.Y.2d 562 (2002) ............................................................................... 13

*Grumman Allied Industries, Inc. v. Rohr Industries, Inc.*,
    748 F.2d 729 (2d Cir. 1984)...................................................................... 19

*Harmit Realties LLC v. 835 Avenue of the Americas*,
    135 A.D.3d 564 (1st Dep't 2016) .............................................................. 19

*HRA Grp. Holdings Ltd. v. Mark's Majestic Diamonds, Inc.*,
    No. 13 Civ. 8791, 2015 WL 5316404 (S.D.N.Y. Sept. 11, 2015) ............................. 24

*L-7 Designs, Inc. v. Old Navy, LLC*,
    647 F.3d 419 (2d Cir. 2011)...................................................................... 10

*Lawrence v. Miller*,
    86 N.Y. 131 (1881). ................................................................................. 15

*Lexon Ins. Co. v. Wells Fargo Bank*,
    619 Fed.Appx. 27 (2d Cir. 2015).................................................................. 10

*Lockheed Martin Corp. v. Retail Holdings, N.V.*,
    639 F.3d 63 (2d Cir. 2011)........................................................................ 13

*Lucente v. Int'l Bus. Machines Corp.*,
    146 F. Supp. 2d 298 (S.D.N.Y. 2001).......................................................... 17

*Manufacturers Hanover Trust Co. v. Yanakas*,
    7 F.3d 310 (2d Cir. 1993) ......................................................................... 12

*Maxton Bldrs. v. Lo Galbo*,
    68 N.Y.2d 373 (1986) ............................................................................... 15

iii

*Medimmune, Inc. F. Genentech, Inc,.*
  549 U.S. 118 (2007)..................................................................... 23

*Metro. Suburban Bus Auth. v. Cty. of Nassau,*
  Index No. 451042/2012, 2013 WL 4526021 (N.Y. Sup. Aug. 26, 2013)................................ 18

*Myers Industries Inc. v. Schoeller Arca Systems, Inc.,*
  171 F.Supp.3d 107 (S.D.N.Y. 2016)..................................................... 22

*N.Y. Times Co. v. Gonzales,*
  459 F.3d 160 (2d Cir. 2006)............................................................ 23

*Neopham Ltd. v. WyethAyerst Int'l LLC,*
  170 F.Supp.3d 612 (S.D.N.Y. 2016)........................................... 10, 13, 15

*NetJets Aviation, Inc. v. LHC Communications, LLC,*
  537 F.3d 168 (2d Cir. 2008)............................................................ 24

*Norcon Power Partners, L.P. v. Niagara Mohawk Power Corp.,*
  92 N.Y.2d 458 (1998) ................................................................... 17

*Personal Watercraft Products SARL v. Robinson,*
  2017 WL 4329790 (S.D.N.Y. Sept. 1, 2017)........................................ 24

*Pesa v. Yoma Dev. Grp., Inc.,*
  18 N.Y.3d 527 (2012) ................................................................... 18

*PPI Enterprises (U.S.), Inc., v. Del Monte Foods Co.,*
  2000 WL 1425093 (S.D.N.Y. Sept. 26, 2000)....................................... 11

*Randolph Equities, LLC v. Carbon Capital, Inc.,*
  648 F. Supp. 2d 507 (S.D.N.Y. 2009)................................................. 18

*Record Club of America, Inc. v. United Artists Records, Inc.,*
  890 F.2d 1264 (2d Cir.1989)....................................................... 12, 17

*Richards v. Select Ins. Co.,*
  40 F. Supp. 2d 163 (S.D.N.Y. 1999)................................................. 11

*Smickle v. City of New York,*
  2018 WL 1578381 (S.D.N.Y. March 29, 2018) ................................... 11

*St. Paul Mercury Ins. Co. v. M & T Bank Corp.,*
  No. 12 Civ. 6322(JFK), 2014 WL 641438 (S.D.N.Y., Feb. 19, 2014)................................... 21

*Stewart v. Jackson & Nash,*
    976 F.2d 86 (2d Cir. 1992)..................................................................... 20

*Stokes v. Lusker,*
    No. 08 CIV. 3667 (CM), 2009 WL 612336 (S.D.N.Y. Mar. 4, 2009) .................................... 12

*Tradax Energy, Inc. v. Cedar Petrochemicals, Inc.,*
    317 F.Supp.2d 373 (S.D.N.Y. 2004)........................................................... 17

*UMB Bank, Nat'l Ass'n v. Airplanes Ltd.,*
    260 F. Supp. 3d 384 (S.D.N.Y. 2017)......................................................... 14

*United States v. Hon Yee–Chau,*
    17 F.3d 21 (2d Cir. 1994) ....................................................................... 18

*Uzan v. 845 UN Limited Partnership,*
    10 A.D.3d 230 (1st Dep't 2004) ........................................................ 15, 16

*VoiceAge Corp. v. RealNetworks, Inc.,*
    926 F.Supp.2d 524 (S.D.N.Y. 2013)...................................................... 11, 13

*Warner Theatre Assocs. Ltd Partnership v. Metro. Life Ins. Co.,*
    149 F.3d 134 (2d Cir. 1998).................................................................. 19

*Weihai Textile Group Import & Export Co., Ltd. v. Level 8 Apparel, LLC,*
    2014 WL 1494327, No. 11 Civ. 4405 (ALC) (FM) (S.D.N.Y. March 28, 2014)................... 23

*Wild Bunch, SA v. Vendian Entm't, LLC,*
    No. 17 CIV. 1383, 2018 WL 1365690 (S.D.N.Y. Feb. 26, 2018) ........................... 20

**Rules**

28 U.S.C. § 1332 ..................................................................................... 10

28 U.S.C. § 2201(a) ............................................................................... 22

Fed. R. Civ. P. 12(b)(6)...................................................................... 11, 12

Fed. R. Civ. P. 12(c) ...................................................................... *passim*

Plaintiff 28th Highline Associates, L.L.C. submits this memorandum of law in support of its motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c), and for fees and costs pursuant to the parties' agreement.

## PRELIMINARY STATEMENT

Plaintiff seeks the release of a deposit on a luxury apartment pursuant to an unambiguous written agreement between a seller and purchaser after Defendant purchaser breached the contract by failing to close on the purchase.  Defendant has not stated—and cannot state—any defense.  The entire case should be resolved now on the merits.

Pursuant to the agreement dated December 2015 (the "Agreement"), Defendant agreed to purchase from Plaintiff a condominium apartment, storage unit and parking space in a building then under construction in Manhattan.  As required, Defendant placed a 20% deposit on the property, in the amount of $2,113,000.00, to be held in escrow until the closing of title and Defendant's transfer to Plaintiff (the sponsor/seller) of the remainder of the purchase price.

With construction complete in July 2017, Plaintiff notified Defendant of the scheduled closing date, but Defendant refused to close on the sale within the time prescribed by the Agreement.  Pursuant to the Agreement, Plaintiff issued a notice of default on November 9, 2017, giving Defendant 30 days to cure and close.  Defendant failed to close within the prescribed cure period and thus breached the Agreement.  After some fruitless discussions, on January 19, 2018, Plaintiff wrote Defendant that it was planning to terminate the Agreement pursuant to its explicit termination provisions.  In response, Defendant issued a notice to the escrow agent claiming (for the first time) that he was fraudulently induced into the Agreement through alleged oral misrepresentations, and instructing the escrow agent to hold the deposit.  On January 24, 2018, Plaintiff terminated the Agreement and demanded that the escrow agent

1

release the deposit.  However, per the Agreement, the escrow agent may not release the deposit until either: (1) the parties jointly execute a statement in writing directing that it be released; or (2) a final, non-appealable order or judgment of a court is entered.  This action therefore ensued.

The pleadings have closed and no fact discovery is needed as all that is necessary to resolve this straightforward breach of contract case is for the Court to interpret the Agreement and apply it to the allegations in the pleadings.  There is no factual or legal basis for Defendant's refusal to accept the simple, unambiguous terms of the Agreement.  Pursuant to the Agreement, Defendant forfeited the deposit by failing to close within the prescribed period, and as a result, now owes Plaintiff the costs and fees it has incurred to secure the release of the deposit. Defendant's manufactured counterclaims are a futile attempt to avoid his contractual obligations and should be dismissed now as a matter of law based on the Agreement's explicit terms. Defendant cannot state a counterclaim for fraudulent inducement because the Agreement specifically provides that he did not rely on any representations outside the integrated Agreement.  His counterclaim for repudiation fails because he cannot show that Plaintiff breached the Agreement or that he was prepared to close.  At bottom, Defendant is a remorseful buyer who changed his mind about closing on the property and wants his deposit back—an outcome which the Agreement anticipates might occur and explicitly prohibits. Plaintiff is entitled to judgment in favor of its claims and dismissal of all of Defendants' counterclaims.

## FACTUAL AND PROCEDURAL BACKGROUND

### 1. In 2015, Defendant Agrees to Purchase A Luxury Apartment and Other Property from Plaintiff

In 2014, construction began on 520 West 28th Condominium (the "Condominium"), located at 520 West 28th Street, New York, NY 10001 (the "Building").  (Declaration of Emily Reisbaum, dated May 25, 2018 ("Reisbaum Decl.") Ex. 1 ("Compl."), ¶¶ 2, 15, 17).  The

2

Building was designed by the Pritzker Prize-winning architect Zaha Hadid and is located immediately adjacent to the High Line.  (*Id.* ¶ 16).  Plaintiff, the sponsor under the offering plan of the Condominium, began listing planned apartments for sale while construction of the Building took place.  (*Id.* ¶¶ 15, 17).  One planned apartment was Unit 33 (the "Apartment"), a three-bedroom apartment located on the 17th floor of the Building.  (*Id.* ¶ 17).

Defendant is a non-citizen who resides in Gibraltar.  (Reisbaum Decl. Ex. 2 ("Roache Decl."), ¶ 1).  He is the Chairman of Domain Venture Partners, where he manages a structured investment fund for experienced investors.  (*Id.* ¶¶ 11-12).  In December 2015, with the advice of two lawyers (his in-house counsel and a specialized New York City real estate attorney), Defendant agreed to buy the Apartment and related property.  (*See* Reisbaum Decl. Ex. 3, Plaintiff's Reply to Counterclaims ("Reply"), ¶ 8; Ex. M).  The purchase was documented in an agreement and related riders, dated and executed on December 22, 2015 (altogether the "Agreement").  (Compl. Ex. A).[1]  The Agreement explicitly incorporated by reference the Condominium's offering plan (the "Offering Plan"), which provided additional details regarding the Building and the Apartment.  (*Id.* at ¶ 11.2). Defendant received a copy of the Offering Plan, and all amendments.  (*Id.* at ¶ 11.1; *see also* Reisbaum Decl. Ex. 4, ("Answer") ¶ 20).

Defendant agreed to purchase the Apartment for $9,795,000.00.  (Compl. Ex. A. ¶¶ 2, 3.1).  He also agreed to purchase licenses for the right to a storage unit (the "Storage Vault") and parking space (the "Parking Space") (the Apartment, Storage Vault License, and Parking Space License altogether, the "Property"), in the Building for $250,000 and $520,000 respectively, for

---

[1] There is no dispute as to the terms of the Agreement.  In response to each paragraph of the Complaint in which Plaintiff described the Agreement, Defendant referred the Court to the terms of the Agreement itself.  (*See* Answer ¶¶ 2, 4-5, 7, 18-32, 34-36, 38, 44-45, 50, 56, 60-62, 66.)

a total of $10,565,000.00 (the "Purchase Price.")  (Compl. Ex. A. Rider to Agreement Re:

Storage Vault License ¶ 1.A; Rider to Agreement Re: Parking Space License ¶ 1.A.).

Defendant agreed that he would place a 20% deposit on the Property, in the amount of

$2,113,000.00 (the "Deposit"), at the date of signing, to be held in escrow by Levitt & Boccio,

LLP (the "Escrow Agent"), until the close of title on the Apartment (the "Closing").  (Compl.

Ex. A. ¶¶ 3.1, 4.1; Rider to Agreement Re: Storage Vault License ¶ 1.B; Rider to Agreement Re:

Parking Space License ¶ 1.B.; Escrow Rider ¶ 10).  Plaintiff would designate the date of the

Closing on 30 days' notice, subject to Defendant's right to "one (1) adjournment of the closing

for a period not to exceed thirty (30) calendar days[.]" (Compl. Ex. A. ¶ 5.1, *see also* Rider to

Purchase Agreement ¶ A).  At the Closing, Defendant would pay the balance of the Purchase

Price, $8,452,000.00, to Plaintiff, the Escrow Agent would release the Deposit to Plaintiff, and

Defendant would receive the deed to the Apartment.  (*Id.* ¶ 3.1(b); Escrow Rider ¶ 10(a)).

The Agreement defined certain events that would constitute Defendant's default under

the contract (an "Event of Default"), and the consequences stemming therefrom.  (*Id.* ¶ 12).  For

instance, Defendant's failure to pay the Balance on the closing date designated by Plaintiff after

the expiration of all adjournment rights granted to Defendant, constituted an Event of Default.

(*Id.* ¶ 12; *see also* Rider to Purchase Agreement ¶ A, B).[2]  After Plaintiff had given Defendant

notice of the same, the Agreement provided Defendant an additional 30 days to cure, during

which time was "of the essence."  (Compl. Ex. A. ¶ 12(b)).  If Defendant failed timely to cure,

---

[2] The Agreement defines an Event of Default as, among other things:  "(i) Purchaser's failure to
pay the Balance or any apportionment or closing cost required to be paid by Purchaser in Article
8 or 9 hereof on the Closing Date designated by Sponsor pursuant to Article 5 hereof . . . . or (ii)
the failure to pay, perform or observe any of Purchaser's other obligations hereunder . . . ."
(Compl. Ex. A. ¶¶ 12(a) (i), (ii)).  These provisions (among others) also apply with respect to the
Storage Vault and Parking Space.  (Compl. Ex. A. Rider to Agreement Re: Storage Vault
License ¶ 4; Rider to Agreement Re: Parking Space License ¶ 4).

Plaintiff had "sole discretion" to cancel the Agreement, and as its sole remedy, the right to retain as liquidated damages the Deposit and any interest earned thereon.  (*Id.*).[3]  The Agreement also gave Plaintiff sole discretion not to strictly enforce the cure period without waiving any of its Default rights, such that Plaintiff could subsequently invoke the default provisions for Defendant's failure timely to close.  (*Id.* at ¶ 30.)[4]

The Parties explicitly (and in all-capital letters) agreed that neither would challenge the validity of the Agreement with respect to the liquidated damages, nor Plaintiff's right to retain the Deposit in the event of Defendant's default.  (*Id.* ¶ 12(d).)  This damages provision was agreed to "VOLUNTARILY, AFTER NEGOTIATION, WITHOUT DURESS OR COERCION BY ANY PARTY UPON ANY OTHER PARTY," and with each party having been, or having the full and adequate opportunity to be, represented and advised by "COUNSEL, ACCOUNTANTS, BROKERS, APPRAISERS AND OTHER EXPERTS AND ADVISORS OF ITS OWN CHOOSING."  (*Id.*)   Defendant was in fact represented by counsel, Jesse Gordon of Costello & Gordon LLP, during the Agreement's negotiation, as well as his own in-house counsel.  (Reply, ¶ 8; Ex. M.)

Besides the representations in the Agreement and Offering Plan, Defendant agreed that he had not relied on any other representations, warranties, architect's plans, statements, or

---

[3] The Agreement states:  "If the default is not cured within such thirty (30) days, TIME BEING OF THE ESSENCE, then Sponsor, in its sole discretion, may thereupon cancel this Agreement. If Sponsor elects to cancel, this Agreement shall be deemed cancelled, and sponsor, as its sole remedy, shall have the right to retain, as and for liquidated damages, the Deposit and any interest earned on the Deposit."  (Compl. Ex. A. ¶ 12(b)).

[4] The Agreement provides:  "Any failure by either party hereto to insist upon the strict performance by the other party of any of the provisions of this Agreement shall not be deemed a waiver of any of the provisions hereof, and each party, notwithstanding any such failure, shall have the right thereafter to insist upon the strict performance by the other party of any and all of the provisions of this Agreement to be performed by such other party."  (Compl. Ex. A. ¶ 30.)

estimates, written or oral, in deciding to enter into the Agreement, and that this provision would survive closing of title or termination of the Agreement.  (Compl. Ex. A. ¶ 20).  The parties also agreed that the Agreement could not be orally modified.  (*Id.* ¶ 42).  Instead, any changes were required to be set forth in a separate written agreement signed by the parties and referring to the Agreement.  (*Id.)*  No such separate agreement exists.  (Answer, Counterclaims ¶ 16 ("the parties never agreed to terms on any of these subjects"); *see also* Reply ¶ 16 (admitting same)).

Finally, the Agreement contained a one-way fee-shifting clause, which provided that if Defendant defaulted, he would be obligated to reimburse Plaintiff, *inter alia*, for any legal fees and disbursements it incurred in enforcing its rights thereunder.  (Compl. Ex. A. ¶ 35).  This provision also survives the termination of the Agreement.  (*Id.*).[5]

The Agreement (and associated Riders) was executed on December 22, 2015.  (Compl. Ex. A).  On or about December 21, 2015, Defendant, through his attorneys, paid the Deposit.  (Answer ¶ 33).  The Deposit was then transferred into an individual escrow sub-account in Defendant's name, within the Escrow Agent's master escrow account.  (Compl. ¶ 33).

### 2.  <u>Defendant Breaches the Agreement by Failing to Timely Close</u>

With construction complete, on June 21, Plaintiff notified Defendant that the Closing was scheduled to occur on July 24, 2017.  (Compl. Ex. C).  Pursuant to the Agreement, on July 18, 2017, Defendant elected to exercise his right to adjourn the closing date by 30 days, further requesting that the closing occur at a "mutually agreeable date and time no later than August 23, 2017 at 2:00 P.M."  (Compl. Ex. D; *see also* Answer ¶ 10).

---

[5] The Agreement states:  "Purchaser shall be obligated to reimburse Sponsor for any legal fees and disbursements incurred by Sponsor in defending Sponsor's rights under this Agreement, or in the event Purchaser defaults under this Agreement beyond any applicable grace period, in canceling this Agreement or otherwise enforcing Purchaser's obligations hereunder.  The provisions of this Article shall survive closing of title or the termination of this Agreement."  (Complaint Ex. A. ¶ 35).

Despite this representation, Defendant did not close title on or before August 23, 2017, or any time thereafter.  (Compl. ¶ 37; *see also* Answer ¶ 37 (averring "that no closing occurred on or before August 23, 2017"); ¶ 40 (denying that Defendant "improperly" failed to close).) Instead, Defendant strung Plaintiff along for months, to no avail.

On September 8, 2017, Gregory Gushee, the development head of the Condominium, emailed Defendant and stated, "[b]efore our lawyer sends a default notice, I wanted to reach out to you to find out what your intentions are."  (Reply Ex. A.)  Defendant replied the next day, "[m]y intention is to close."  (*Id.*)  Plaintiff's counsel sent Defendant's counsel, Jesse Gordon, a proposed amendment to the Agreement on October 12, 2017, which proposed an extension of the Closing Date to January 5, 2018.  (Reply. Ex. N).  However, on October 26, 2017, Mr. Gushee wrote Defendant, "[w]e have not heard from you on the amendment to extend closing date. Please let us know how you would like to proceed as cannot [*sic*] extend without an amendment. If we do not hear back from you we will have to send a default notice."  (Reply Ex. C. at 2). Defendant wrote back the same day, "[w]e will be closing in the New Year but we will have some proposed changes to the amendment… Jesse [Gordon, Defendant's counsel] will loop back to you early next week."  (*Id.* at 1).  On October 31, 2017, Mr. Gushee replied: "do you have comments to the agreement?... we need to do the amendment now.  Thank you."  (*Id.*)  Once again, Defendant stated that he would discuss with his attorney and "loop back within 24 hours." (*Id.*)

On November 9, 2017, Plaintiff sent Defendant a Notice of Default (the "Notice"), pursuant to Paragraph 12(b) of the Agreement.  (Compl. Ex. E).  The Notice alerted Defendant that his failure to close title constituted an Event of Default, as defined by the Agreement, and that "[a]ll periods of adjournment to which [Defendant] was entitled under the Complete

Agreement have also been exhausted." (*Id.*).  It stated that Defendant's failure to cure within 30 days would result in Plaintiff exercising its remedies under the Agreement, including retention of the Deposit, all interest earned thereon, and cancellation of the Agreement. (*Id.*).

On November 16, 2017, Defendant wrote Mr. Gushee, "[w]e are obviously disappointed to have received a default notice.  However, we would like to confirm the following:  I still want to close.  I am working with HSBC and they have advised that they can close the loan by end of February… I would like the close date in a revised adjournment agreement to reflect this new date" (Reply Ex. D).  Mr. Gushee wrote back, "[g]lad you still want to move forward.  Can you close before end of January?" (*Id.*)  Defendant replied on November 22, 2017, "[w]e will start to look for an alternate lender so that we can close by end January." (Reply Ex. E. at 2).

On December 4, 2017, Plaintiff's counsel sent Defendant and his counsel a revised draft of the proposed amendment, setting a new Closing Date of February 28, 2018 and stating, "[a]s the cure period under the Notice of Default will expire shortly, your prompt attention is appreciated." (Reply Ex. E.)  On December 11, 2017, Mr. Gushee wrote again: "[f]ollowing up on the lease amendment.  Any comments?  We need to finalize." (Reply Ex. F).  The same day, Defendant's counsel wrote back, "[u]nderstood.  I will be discussing with [Defendant] and getting back to you and Jeff [Levitt, counsel to Sponsor] ASAP." (*Id.*)

On December 20, 2017, Mr. Gushee wrote Defendant informing him that Plaintiff had negotiated an extension of the deadline to close with their own lender, which meant that Defendant could close at the end of February, as he had requested.  (Reply Ex. G).  That day, Mr. Levitt sent a revised draft of the proposed amendment, setting a new Closing Date as February 28, 2018, and stating, "[a]s the cure period for your default has now expired, [Mr. Gushee] has asked me to advise you that if we do not receive the signed amendment and funds by 5:00PM on

Friday, December 22, 2017, [Plaintiff] will be terminating the contract and we will release the deposit to [Plaintiff] in accordance with the Escrow Agreement." (Reply Ex. H.) Defendant's counsel responded, "[r]eceived-thank you!" (Reply Ex. I.) Defendant never signed the amendment nor transmitted the funds; as Defendant concedes, Plaintiff and Defendant never agreed to these terms or a new Closing Date. (Answer ¶ 16; Reply ¶ 16.)

### 3. Plaintiff Informs Defendant That it Will Terminate the Agreement, and Defendant Wrongfully Instructs the Escrow Agent to Not Release the Deposit

On January 8, 2018, Mr. Gushee wrote Defendant stating, "[w]e have not heard from you regarding the contract amendment or closing. The deadline was before the holidays... now we must do something. [I]f you need another day to execute the amendment and send wire then ok. Otherwise, unfortunately we have no choice but to terminate the contract. Please let me know how you are planning to proceed." (Reply Ex. J.) Eleven days later, on January 19, 2018, Mr. Gushee wrote again, stating: "Iain—[s]ince you are not responding we have no choice but to terminate the contract. We will do so on Monday. If you want to reach me over the weekend please do." (*Id.*) An hour later, Michael Regan, Defendant's counsel, emailed a letter to Mr. Levitt rejecting Plaintiff's right to the Deposit and instructing it not be released to Plaintiff, unless and until directed otherwise by a court of law. (Compl. Ex. F; *see also* Reply Ex. K.)

On January 24, 2018, Plaintiff sent Defendant a Notice of Termination of the Agreement (the "Termination"). (Reply Ex. L.) The Termination stated that "[a]ll periods for [Defendant] to cure the Event of Default, and a reasonable time thereafter, have since tolled and expired," and that Plaintiff was electing to cancel the Agreement pursuant to Paragraph 12. (*Id.*). The Termination also relayed that, under the Agreement, Plaintiff was entitled to the Deposit as its liquidated damages, and demanded that the Escrow Agent release the Deposit. (*Id.*). Plaintiff also issued a separate letter to the Escrow Agent making the same demand. (Complaint Ex. G).

9

The Escrow Agent notified Defendant of its receipt of Plaintiff's demand for the Deposit. (*Id.*).  However, per the Agreement, the Escrow Agent is not permitted to release the Deposit unless so directed either by a writing signed by both parties, or a final, non-appealable order or judgment of a court.  (Compl. Ex. A. Escrow Rider ¶ 10).

### 4.  **This Action Commences and the Pleadings Close**

Plaintiff filed this action on February 19, 2018, alleging breach of contract and seeking, in the alternative, declaratory judgment that the Escrow Agent release the Deposit to Plaintiff. (*See* Compl.).[6]  On May 4, 2018, Defendant filed his Answer, Affirmative Defenses, and Counterclaims.  (Answer.)  On May 25, 2018, Plaintiff filed its Reply.  (Reply.)

## ARGUMENT

## I.    LEGAL STANDARD AND SUMMARY OF ARGUMENT

The parties are citizens of diverse states:  Plaintiff is a Delaware corporation with its principal place of business in New York; Defendant is an individual who resides in Gibraltar. (Compl. ¶ 10; Answer ¶ 11.)  As a result, this Court has jurisdiction pursuant to 28 U.S.C. § 1332; New York law governs the Agreement.  (Compl. Ex. A ¶ 32.)

Federal Rule of Civil Procedure 12(c) provides that "[a]fter the pleadings are closed…a party may move for judgment on the pleadings."  Fed. R. Civ. P. 12(c).  "On a 12(c) motion, the court considers the complaint, the answer [and] any written documents attached to them . . ."  *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 422 (2d Cir. 2011) cited by *Lexon Ins. Co. v. Wells Fargo Bank*, 619 Fed.Appx. 27, 28 (2d Cir. 2015) (affirming 12(c) dismissal where court considered documents attached to defendant's answer); *Neopham Ltd. v. WyethAyerst Int'l LLC*, 170 F.Supp.3d 612, 614-15 (S.D.N.Y. 2016) (granting 12(c) motion, considering written

---

[6] After some dispute, Defendant eventually conceded service.  (*See* Dkt. Nos. 9-15.)

documents attached to the answer, and noting that "[j]udgment on the pleadings is particularly appropriate in a dispute regarding a breach of contract where the primary issue is determining the parties' legal rights and obligations") citing *VoiceAge Corp. v. RealNetworks, Inc.*, 926 F.Supp.2d 524, 529 (S.D.N.Y. 2013). The Court can also consider "documents that are in the [] possession" of the party opposing the motion. *PPI Enterprises (U.S.), Inc., v. Del Monte Foods Co.*, 2000 WL 1425093, at * 1, (S.D.N.Y. Sept. 26, 2000).

Thus, a motion pursuant to Rule 12(c) may be granted "where [the] material facts are undisputed and where judgment on the merits is possible merely by considering the contents of the pleadings." *Sellers v. M.C. Floor Crofters, Inc.*, 842 F.2d 639, 642 (2d Cir. 1988) (citations omitted). Like a motion pursuant to Rule 12(b)(6), judgment shall be granted where "the moving party 'is entitled to judgment as a matter of law.'" *Smickle v. City of New York*, 2018 WL 1578381, at * 3 (S.D.N.Y. March 29, 2018) quoting *Richards v. Select Ins. Co.*, 40 F. Supp. 2d 163, 165 (S.D.N.Y. 1999). To survive such a motion, Defendant's answer and counterclaims "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 622, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

In New York, a breach of contract claim requires proof of (1) agreement, (2) adequate performance by the plaintiff, (3) breach by the defendant, and (4) damages. *See Fischer & Mandell, LLP v. Citibank, N.A.*, 632 F.3d 793, 799 (2d Cir. 2011). Even at this early stage in the case, there can be no dispute on any of these elements in Plaintiff's favor: the parties entered a written and valid contract; Plaintiff proffered the Apartment for sale; Defendant did not purchase the Property as the contract required; and as liquidated damages, Defendant must forfeit the deposit and further pay Plaintiff's attorneys' fees and costs incurred to secure such relief.

11

Defendant's effort to avoid the consequences of his breach are unavailing.  His repudiation claim fails because his pleadings do not show either that Plaintiff breached the Agreement (*DiFolco v. MSNBC Cable L.L.C.*, 831 F. Supp. 2d 634, 641 (S.D.N.Y. 2011)), or that Defendant was ready, willing, and able to perform his obligations at the time of Plaintiff's supposed repudiation.  *Record Club of America, Inc. v. United Artists Records, Inc.,* 890 F.2d 1264, 1275 (2d Cir.1989).  His fraudulent inducement claim fails because, having disclaimed the "'the existence of or reliance on specified representations,'" [he] will not be allowed to claim [he] entered the contract in reliance thereon."  *Aetna Cas and Sur Co. v. Aniero Concrete Co., Inc.*, 404 F.3d 566, 576 (2nd Cir. 2005) quoting *Manufacturers Hanover Trust Co. v. Yanakas*, 7 F.3d 310, 315 (2d Cir. 1993).  With no legally tenable excuse for his default, there is no controversy to support his claim for declaratory judgment.  Defendant's counterclaims are fatally flawed and must be dismissed.

Judgment on the pleadings should therefore be granted to Plaintiff.

## II.  PLAINTIFF IS ENTITLED TO JUDGMENT ON ITS CLAIMS FOR BREACH OF CONTRACT AND DECLARATORY JUDGMENT

The pleadings reveal no dispute as to the terms which govern the parties' conduct: the Agreement conclusively determines the parties' rights and responsibilities.  The pleadings also reveal no dispute as to the facts:  Plaintiff was prepared to deliver the Property and thus demanded that Defendant close; Defendant failed to close by the Agreement's deadlines; the parties discussed closing even after all the deadlines had passed; but the parties at no time modified the Agreement, which entitles Plaintiff to terminate and obtain the Deposit, and the costs and fees incurred by this action.  *See, e.g., Stokes v. Lusker*, No. 08 CIV. 3667 (CM), 2009 WL 612336, at *2 (S.D.N.Y. Mar. 4, 2009) (dismissing purchaser's various claims for co-op deposit on 12(b)(6) and 12(c) motions where "the liquidated damages clause[] provide[d] that the

[seller] could keep the $250,000 deposit if the plaintiff failed to close… [h]e did not close.  The reason is irrelevant."), *affd*, 425 F. App'x 18 (2d Cir. 2011).

### a.   The Agreement Controls And Is Unambiguous:  If Defendant Fails To Close, He Forfeits The Deposit

As a threshold matter, there is no dispute that the Agreement exclusively and conclusively controls the parties' rights and responsibilities.  Defendant admitted as much.  (*See* fn. 1, above.)  Further, the parties denounced reliance on any written or oral communications conveyed prior to or simultaneously with the execution of the Agreement (Compl. Ex. A. ¶ 38), and looking forward, agreed to be bound only by additional writings signed by the parties.  (*Id.* ¶ 42).  Apart from the Agreement, no such other writing exists.  (Answer ¶ 16).  Thus, the Agreement represents the final word.

In breach of contract disputes, contractual interpretation is a question of law, and "[a] written agreement that is complete, clear and unambiguous on its face must be enforced according to the plain meaning of its terms." *VoiceAge Corp.* 926 F. Supp. 2d at 529–30 (granting plaintiff's motion for judgment on the pleadings based on contract's unambiguous terms), quoting *Greenfield v. Philles Records*, 98 N.Y.2d 562, 569 (2002).  A contract is unambiguous "if the language it uses has a definite and precise meaning, as to which there is no reasonable basis for a difference of opinion."  *Neopharm Ltd.* 170 F. Supp. 3d 615 (S.D.N.Y. 2016) (awarding plaintiff's motion for judgment on the pleadings and to dismiss counterclaim), quoting *Lockheed Martin Corp. v. Retail Holdings, N.V.,* 639 F.3d 63, 69 (2d Cir. 2011).

Here, unambiguously, the Agreement provides:

- Defendant to pay a total **deposit** of $2,113,000.00 to be held in escrow (Complaint Ex. A. ¶¶ 3.1, 4.1; Rider to Agreement Re: Storage Vault License ¶ 1.B; Rider to Agreement Re: Parking Space License ¶ 1.B.; Escrow Rider ¶ 10);

- Plaintiff has the right to set the **closing** date and time, allowing Defendant one adjournment of not more than 30-days (Complaint Ex. A. ¶ 5.1, *see also* Rider to Purchase Agreement ¶ A);

- Defendant's failure to pay the balance of the purchase price and costs upon closing or to perform any of his obligations constitute an **Event of Default** (Complaint Ex. A. ¶ 6.1; 12);

  - in such case, if Defendant fails to cure within 30 days, Plaintiff shall have the right to cancel and retain the deposit as **liquidated damages** (*Id.* ¶ 12(b)); and

  - Defendant agrees **not to challenge** Plaintiff's right to retain the deposit as liquidated damages (*Id.* ¶ 12(d));

- Defendant is responsible for **all costs** incurred by Plaintiff to enforce its rights under the Agreement (*Id.* ¶ 35);

- The written contract documents represent the **entire agreement** between the parties relating to the purchase of the Property (*Id.* ¶ 38);

- Defendant specifically agrees that he relied on **no representations or warranties** except those specifically contained in the Agreement (*Id.* ¶ 20); and

- The Agreement could **not be orally modified**, but rather only by a writing signed by the parties and referring to the Agreement (*Id.* ¶ 42).

These are the terms relevant to this dispute, and they contain no ambiguity—nor do any other of the terms of the Agreement.  Accordingly, this dispute may now be resolved on the face of the Agreement and the pleadings.  *See* Fed. R. Civ. P. 12(c).

With the parameters of the Agreement established, the Court's "primary objective is to give effect to the intent of the parties as revealed by the language" in the Agreement.  *UMB Bank, Nat'l Ass'n v. Airplanes Ltd.*, 260 F. Supp. 3d 384, 393 (S.D.N.Y. 2017) (granting plaintiff's 12(c) motion for judgment), quoting *Bolt Elec., Inc. v. City of New York*, 223 F.3d 146, 150 (2d Cir. 2000).  Here, the parties' intent is perfectly clear:  if Defendant failed to close, he would forfeit the Deposit and pay Plaintiff's costs and fees incurred in obtaining relief.

14

**b.  <u>Defendant Forfeited The Deposit by Failing To Close</u>**

If the contract is unambiguous, the Court may award judgment on the pleadings, assuming no "material" facts are in dispute.  *Neopharm Ltd.*, 170 F. Supp. 3d 615.  No material facts are disputed here:  after Plaintiff set the closing date, Defendant was permitted and requested one 30-day extension, and then failed to purchase the Apartment.  Pursuant to the Agreement, Defendant thus forfeited his right to the Deposit.

Since 1881, New York law on the issue in this case has been crystal clear:  "a vendee who defaults on a real estate contract without lawful excuse, cannot recover the down payment." *Maxton Bldrs. v. Lo Galbo*, 68 N.Y.2d 373, 378 (1986) citing *Lawrence v. Miller*, 86 N.Y. 131, 139-40 (1881).

> To allow a recovery of this money would be to sustain an action by a party on his own breach of his own contract, which the law does not allow.  When we once declare in this case that the vendor has done all that the law asks of him, we also declare that the vendee has not so done on his part.  And then to maintain this action would be to declare that a party may violate his agreement, and make an infraction of it by himself a cause of action.  That would be ill doctrine.

*Lawrence*, 86 N.Y. at 140.  This rule is so well-settled, that since 1986 real estate purchasers have been warned that if they are "dissatisfied with [it], the time to say so is at the bargaining table."  *Maxton Bldrs.*, 68 N.Y.2d at 382.  As the Agreement shows, Defendant accepted this rule.  (Compl. Ex. A. ¶ 12.)  Throughout New York State, courts will deny a down payment refund when the purchaser has defaulted, regardless of whether the down payment was 10%, 25%, or even 50% of the purchase price.  *See Uzan v. 845 UN Limited Partnership*, 10 A.D.3d 230, 237 (1st Dep't 2004) (25% down payment), citing *Chateau D'If Corp. v. City of New York*, 641 N.Y.S.2d 252, *lv. denied* 88 N.Y.2d 811, (1st Dep't 1996); *Armas v. Yuska*, 768 N.Y.S.2d 641 (2nd Dep't 2003); *Collar City Partnership v. Redemption Church*, 651 N.Y.S.2d 729 (3rd Dep't) (50% down payment), *lv. denied* 661 N.Y.S.2d 179; *Badame v. Bock Enters., Inc.,* 593

15

N.Y.S.2d 384 (4th Dep't 1993) (more than 10% down payment).  There is no doubt that the rule should also be enforced in this case as well.

Such deposits have been refunded *only* upon "a showing of disparity of bargaining power between the parties, duress, fraud, illegality or mutual mistake."  *Uzan* 10 A.D.3d at 237 (reversing denial of seller's motion for summary judgment).  In this case, there is no basis for an exception to the well-settled rule.  This Agreement was the product of months-long negotiation, between sophisticated parties, both represented by counsel of their choosing.  (Compl. Ex. A. ¶ 12(d); *see also* Reply Ex. M.)  The parties also disclaimed any reliance on any understanding entered into prior or simultaneously with the Agreement that was not contained in the Agreement itself.  (*Id.* ¶¶ 18, 20).  Defendant has not and cannot put forth a genuine issue as to any material fact that would justify his refusal to permit the Escrow Agent to release the deposit to Plaintiff.

## III.    DEFENDANT DOES NOT AND CANNOT LAY BLAME WITH PLAINTIFF, ENTITLING PLAINTIFF TO JUDGMENT ON THE COUNTERCLAIMS

Doubtless aware of the strength of Plaintiff's position, Defendant cynically attempts to allege that it was *Plaintiff* who breached the Agreement, which, moreover, Defendant now claims he was fraudulently induced into.  (*See generally*, Counterclaims.)  This is a blatant attempt to drum up a dispute where none exists.  The Court should dismiss Defendant's counterclaims and award judgment to Plaintiff on the pleadings.

### a.    Defendant Fails to State a Claim of Anticipatory Repudiation

Defendant's claim that Plaintiff breached the Agreement by repudiating its obligations thereunder clearly fails.  *First,* no repudiation claim will lie where the claimant fails to state a claim for breach of contract, and Defendant states no such claim.  *DiFolco*, 831 F. Supp. 2d at 641 (anticipatory repudiation excuses the *non-breaching* party from performance where the breaching party has indicated that he "will commit a breach that would of itself give the obligee

16

a claim for damages for total breach" or has committed a "voluntary affirmative act which renders the obligor unable or apparently unable to perform without such a breach"), *citing Norcon Power Partners, L.P. v. Niagara Mohawk Power Corp.*, 92 N.Y.2d 458, 463 (1998) *Second,* in any event, Defendant has failed to plead that he was ready, willing, and able to perform his obligations under the contract—i.e., to close on the Apartment, at the time of Plaintiff's supposed breach. *See Record Club,* 890 F.2d at 1275 (the party asserting repudiation bears the burden of proving its own performance); *Tradax Energy, Inc. v. Cedar Petrochemicals, Inc.,* 317 F.Supp.2d 373, 377 (S.D.N.Y. 2004) (same). The claim fails as a matter of law.

As described at length *supra,* Defendant is the party in breach of the Agreement—not Plaintiff. The doctrine of anticipatory repudiation permits the non-breaching party to elect to state a claim for breach of contract at the time of a repudiation, instead of at the time for performance. *Lucente v. Int'l Bus. Machines Corp.*, 146 F. Supp. 2d 298, 317 n.5 (S.D.N.Y. 2001). It is therefore dependent on the existence of a material breach of contract. *DiFolco*, 831 F. Supp. 2d at 641 (S.D.N.Y. 2011); *see also De Forest Radio Tel. & Tel. Co. v. Triangle Radio Supply,* 243 N.Y. 283, 153 N.E. 75, 78 (1926).

Plaintiff's supposed repudiatory acts—issuing the Notice of Termination and instructing the Escrow Agent to release the deposit (*see* Counterclaims ¶¶ 30-34)—are acts perfectly within Plaintiff's discretion under the Agreement once Defendant failed to close on the Apartment within 30 days of receiving the Notice of Default. (Compl. Ex. A. ¶ 12(b), (d)). Nothing contained within Defendant's pleadings rebut this plain fact: Defendant did not close on the Apartment by December 9, 2017, which was 30 days after he received the Notice of Default. (Complaint Ex. E.; *see also* Answer ¶ 38). Therefore, it was he—not Plaintiff—who was in breach of the Agreement at the time the Notice of Termination issued.

17

Because Defendant fails to state a claim for breach, he cannot state a claim for anticipatory breach. *Chatsworth Realty 344 LLC. v. Hudson Waterfront Co. A, LLC.,* Index No. 10999/2002, 2003 WL 1085888, at *6 (N.Y. Sup. Mar. 4, 2003) ("Given that the court has found no basis for a claim of breach of the applicable agreements, this claim [for anticipatory breach] is found wanting.") *aff'd* 309 A.D.2d 567 (1st Dep't 2003); *Metro. Suburban Bus Auth. v. Cty. of Nassau*, Index No. 451042/2012, 2013 WL 4526021 at *4 (N.Y. Sup. Aug. 26, 2013) ("an anticipatory breach of contract. . . occurs before performance of a contractual duty is due… [where Defendant] owes no duty under the Agreement, and there can be no anticipatory repudiation of a duty not owed") (internal citations omitted).

Defendant's repudiation claim fails in any event, because he has not pled that he had the requisite "willingness and ability to perform before the repudiation and that [he] would have rendered the agreed performance" were it not for Plaintiff's supposed repudiation. *Randolph Equities, LLC v. Carbon Capital, Inc.*, 648 F. Supp. 2d 507, 519 (S.D.N.Y. 2009), *citing United States v. Hon Yee–Chau*, 17 F.3d 21, 26 (2d Cir. 1994). A claimant must so plead because because it is "axiomatic" that damages for breach of contract are not recoverable where they were not actually caused by the breach. *Pesa v. Yoma Dev. Grp., Inc.*, 18 N.Y.3d 527, 532 (2012) ("the rule requiring non-repudiating buyers to show their readiness, willingness and ability to perform is supported by common sense.") Nowhere does Defendant state that he was ready, willing, and able to close on the Apartment when Plaintiff issued the Notice of Termination on January 24, 2018. (*See generally,* Counterclaims). His purported anticipatory repudiation claim must be dismissed.

**b.   <u>Defendant Cannot State a Claim for Fraudulent Inducement</u>**

Defendant's claim for fraudulent inducement fails because (1) it is entirely dependent on alleged oral misrepresentations (Counterclaims ¶¶ 4-8), yet (2) in signing the Agreement, Defendant specifically disclaimed reliance on any such representations and affirmed that the written Agreement reflected the parties' entire agreement with respect to the Property.  (Compl. Ex. A ¶¶ 20, 38.)  Decades-old and "venerable principles" of New York law on this point could not be more clear:  Defendant has no claim.  *Aetna Cas. and Sur. Co.*, 404 F.3d *at* 575 (2d Cir. 2005) (referring to the principles laid out in *Danann Realty Corp. v. Harris*, 184 N.Y.S. 2d 597 (1959)).

"Under the New York law of fraudulent inducement, 'a specific disclaimer [in an agreement] destroys the allegation in [a] plaintiff's complaint that the agreement was executed in reliance upon . . . contrary oral representations.'"  *Warner Theatre Assocs. Ltd Partnership v. Metro. Life Ins. Co.*, 149 F.3d 134, 136 (2d Cir. 1998) quoting *Danann*, 184 N.Y.S. 2d at 320-21; *see also Harmit Realties LLC v. 835 Avenue of the Americas*, 135 A.D.3d 564, 564-65 (1ˢᵗ Dep't 2016) (affirming dismissal of fraudulent inducement claim based on disclaimers in agreement). Indeed, permitting such a claim in these circumstances "would allow the plaintiff to 'deliberately misrepresent' its purported non-reliance in the contract, and would make it impossible for 'two businessmen dealing at arm's length to agree that the buyer is not buying in reliance on any representations of the seller as to a particular fact.'"  *Aetna Cas. and Sur. Co.*, 404 F.3d at 575. "For a contract term to be sufficiently specific under this standard, there need not be a 'precise identity between the misrepresentation and the particular disclaimer.'"  *Id.*, at 576 quoting *Grumman Allied Industries, Inc. v. Rohr Industries, Inc.*, 748 F.2d 729, 735 (2d Cir. 1984). "Rather, '[t]he *Danann* rule operates where the substance of the disclaimer provisions tracks the

substance of the alleged misrepresentations, notwithstanding semantical discrepancies.'" *Id.*

"The specificity requirement is further relaxed when the contracting parties are 'sophisticated

business people,' and the disclaimer clause is the result of negotiations between them." *Id.*

quoting *Citibank, N.A. v. Plapinger*, 495 N.Y.S.2d 309, 311-12 (1985).  Finally, alleged oral

representations about facts or events yet to occur are not actionable.  *Wild Bunch, SA v. Vendian*

*Entm't, LLC*, No. 17 CIV. 1383, 2018 WL 1365690, at *3 (S.D.N.Y. Feb. 26, 2018) (granting,

*inter alia*, partial judgment on pleadings), citing *Cohen v. Koenig*, 25 F.3d 1168, 1172 (2d Cir.

1994) (noting that "statements will not form the basis of a fraud claim when they are mere

'puffery' or are opinions as to future events"); *see also Stewart v. Jackson & Nash*, 976 F.2d 86,

89 (2d Cir. 1992).

Defendant alleges three oral misrepresentations, none of which are actionable:  (1) the

Building was 60-70% sold out; (2) the Sponsor had a present plan to increase prices by 8 to 12%,

though the alleged increase had not gone into effect; and (3) Ms. Hadid, the Building's architect,

had committed to purchasing the apartment directly above the one Defendant was interested in.

(Counterclaims ¶ 5.)  Each of these alleged misrepresentations are disclaimed in the Agreement,

wherein Defendant promised:

> Purchaser [(Defendant)] acknowledges that Purchaser has not relied upon any
> architect's plans, sales plans, selling brochures, advertisements, representations,
> warranties, statements or estimates of any nature whatsoever, whether written or
> oral, mady by Sponsor, Selling Agent or otherwise, including, but not limited to,
> any relating to the description of physical condition of the Property, the Building
> or the Unit, . . . or any other data, except as herein or in the Plan specifically
> represented . . . No person has been authorized to make any representations on
> behalf of Sponsor.  No oral representations or statements shall be considered a
> part of this Agreement.

(Compl Ex. A. ¶ 20.)  All three of the alleged misrepresentations are "sales plans,"

"representations," "estimates," and/or "data"—upon all of which Defendant specifically

promised not to rely.  The alleged misrepresentations further involve predicted events set to occur in the future:  prices would increase, but had not yet; and Ms. Hadid had committed to purchase, but had not yet.

Moreover, Defendant is a "sophisticated business person:"  He "founded Domain Venture Partners, a structured investment fund group."  (Answer ¶ 3.)   He also was represented by counsel throughout the negotiations with Plaintiff.  (Reply ¶ 8, Exhibit M.)  Thus, if these alleged misrepresentations were truly material to Defendant, he certainly had the sophistication, guidance, and means to ensure that the Agreement required Plaintiff to affirm then.  He did not. He cannot now be heard to claim that he relied upon them, and that Plaintiff committed fraud as a result.  "[W]here ... a party has been put on notice of the existence of material facts which have not been documented and he nevertheless proceeds with a transaction without securing the available documentation or inserting appropriate language in the agreement for his protection, he may truly be said to have willingly assumed the business risk that the facts may not be as represented.  Succinctly put, a party will not be heard to complain that he has been defrauded when it is his own evident lack of due care which is responsible for his predicament." *Lazard Freres & Co. v. Protective Life Ins. Co.*, 108 F.3d 1531, 1543 (2d Cir.1997) (citation and internal quotation marks omitted); *see also St. Paul Mercury Ins. Co. v. M & T Bank Corp.*, No. 12 Civ. 6322(JFK), 2014 WL 641438, at *5 (S.D.N.Y., Feb. 19, 2014) ("Where the party asserting reliance is sophisticated, and the purported statement relates to a business transaction that has been formalized in a contract, New York courts are generally reluctant to find reliance on oral communications to be reasonable.") (internal quotation omitted); *DDJ Mgmt., LLC v. Rhone Grp. L.L.C.*, 905 N.Y.S.2d 118, 122, 15 N.Y.3d 147, 154 (2010) ("Indeed, there are many cases

in which the plaintiff's failure to obtain a specific, written representation is given as a reason for finding reliance to be unjustified.").

Plaintiff is entitled to judgment on Defendant's fraudulent inducement counterclaim.

### IV.  **ONLY PLAINTIFF IS ENTITLED TO DECLARATORY RELIEF**

Plaintiff is entitled to judgment on its request for declaratory relief because there is an actual controversy that warrants the Court's exercise of jurisdiction over Plaintiff's declaratory judgment action.  *See*, 28 U.S.C. § 2201(a); *Dow Jones & Co. v. Harrods Ltd.*, 346 F.3d 357, 359 (2d Cir. 2003).  The opposite is true for Defendant's claim.

"An actual controversy is one where 'the facts alleged, under all circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment."  *Myers Industries Inc. v. Schoeller Arca Systems, Inc.*, 171 F.Supp.3d 107, 122 (S.D.N.Y. 2016).  This is certainly the case here, with regard to Plaintiff's claim.  Defendant failed to close on the Property, thus entitling Plaintiff to immediate release of the Deposit, as well as its attorney's fees and costs; Defendant objected, directing the Escrow Agent not to release the Deposit, significantly prejudicing Plaintiff and creating the susbstantial controversy.  (*See supra* at 13-17.)

Where an actual controversy exists, "the Court retains broad discretion to exercise jurisdiction over the declaratory judgment action."  *Myers Industries*, 171 F.Supp.3d at 122.  The Second Circuit has outlined five factors that a Court should consider in determining whether to exercise jurisdiction:

> (i) Whether the judgment will serve a useful purpose in clarifying or settling the legal issues involved; (ii) whether a judgment would finalize the controversy and offer relief from uncertainty; (iii) whether the proposed remedy is being used merely for 'procedural fencing' or a 'race to res judicata'; (iv) whether the use of a declaratory judgment would increase friction between sovereign legal systems or improperly encroach on the domain of a state or foreign court; and (v) whether there is a better or more effective remedy.

22

*N.Y. Times Co. v. Gonzales*, 459 F.3d 160, 167 (2d Cir. 2006) citing *Dow Jones*, 346 F.3d at 359

(2d Cir. 2003).  Oftentimes, claims for declaratory relief are dismissed where they are

duplicative of a breach of contract claim (as they would be if Defendant had stated an actual

controversy).  *See, Weihai Textile Group Import & Export Co., Ltd. v. Level 8 Apparel, LLC*,

2014 WL 1494327, at *14, No. 11 Civ. 4405 (ALC) (FM) (S.D.N.Y. March 28, 2014) (gathering

cases).  Though there is some overlap, Plaintiff's claims are not entirely duplicative.  A

declaration that the Escrow Agent should release the Deposit to Plaintiff will result in the funds

immediately being available to Plaintiff (assuming Defendant does not appeal), without further

involvement from the Court or effort by the Plaintiff.  This will serve the very "useful purpose"

in settling the issue of the Deposit—*Gonzales* factor (i).  But it would not solve the entire case,

and thus there is not a better or more effective remedy (*Gonzales* factors (ii) and (v)), as Plaintiff

still would require the Court's assistance in the adjudication of the amount of attorney's fees and

costs to which it is entitled.  *Gonzales* factors (iii) and (iv) (which weigh against the exercise of

jurisdiction) do not apply.

Defendant's claim, however, is not the inverse to Plaintiff's claim for the simple reason

that Defendant failed to allege a controversy because (as discussed in Point III, above) he failed

to state any viable claim whatsoever.  *See Medimmune, Inc. F. Genentech, Inc,.* 549 U.S. 118,

127-28 (2007) ("Basically, the question in each case is whether the facts alleged, under all the

circumstances, show that there is a substantial controversy . . . of sufficient immediacy and

reality to warrant the issuance of a declaratory judgment.")  In light of the Agreement and the

pleadings, Defendant has no claim; without a live claim, his bare demand for the return of the

escrow is not sufficient to create a controversy.  Even if he had a claim, it would overlap

completely with his contract and fraud claims, as it "seeks a declaration of the same rights as will

be determined" under the other claims."  *Personal Watercraft Products SARL v. Robinson*, 2017 WL 4329790, at * 11 (S.D.N.Y. Sept. 1, 2017).

Thus, Plaintiff is entitled to judgment on the pleadings both granting its request for declaratory relief and denying Defendant's request for the same.

## V.    PLAINTIFF SHOULD BE AWARDED ATTORNEYS' FEES AND COSTS

Plaintiff's demand for costs and attorneys' fees should be granted.  (Compl. Ex. A. ¶ 35.) Under New York law, a contract providing for an award of reasonable attorneys' fees to the prevailing party in an action to enforce the underlying contract is enforceable if the contract language is "sufficiently clear."  *HRA Grp. Holdings Ltd. v. Mark's Majestic Diamonds, Inc.*, No. 13 Civ. 8791, 2015 WL 5316404, at *7 (S.D.N.Y. Sept. 11, 2015), citing *NetJets Aviation, Inc. v. LHC Communications, LLC*, 537 F.3d 168, 175 (2d Cir. 2008).  A "prevailing party" is one who achieves the "central relief sought" in prosecuting or defending against a claim. *Graham Court Owner's Corp. v. Taylor*, 24 N.Y.3d 742, 752 (2015).

Here, the Agreement's fee-shifting provision is crystal clear: "[Defendant] shall be obligated to reimburse [Plaintiff] for any legal fees and disbursements incurred by [Plaintiff] in defending [Plaintiff's] rights under this Agreement or, in the event [Defendant] defaults under this Agreement beyond any applicable grace period, in canceling this Agreement or otherwise enforcing [Defendant's] obligations hereunder."  (Compl. Ex. A ¶ 35.)  Further, the fee-shifting provisions " shall survive closing of title or the termination of this Agreement."  (*Id.*) Accordingly, if Plaintiff prevails on this motion—as it should—the Court should award Plaintiff its reasonable costs and expenses, including attorneys' fees, incurred to date.

## CONCLUSION

For the reasons stated herein, the Court should dismiss Defendant's counterclaims, enter

judgment to Plaintiff on the pleadings, and award Plaintiff its attorneys' fees, costs, and

expenses.


Dated:  May 25, 2018                                     CLARICK GUERON REISBAUM LLP

                                   By:   _____
                                                         Emily Reisbaum
                                                         Nicole Gueron
                                                         Ashleigh Hunt
                                                         220 Fifth Avenue, 14th Floor
                                                         New York, N.Y. 10010
                                                         Telephone:  212.633.4310
                                                         Facsimile:  646.478.9484
                                                         Email:  ereisbaum@cgr-law.com

                                                         *Attorneys for Plaintiff 28th Highline
                                                         Associates, L.L.C*


25