UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------X

28TH HIGHLINE ASSOCIATES, L.L.C.,                18 Civ. 1468

                    Plaintiff,                   OPINION

        -against-

IAIN ROACHE,

                    Defendant.

----------------------------------X

A P P E A R A N C E S:

        Attorneys for Plaintiff

        CLARICK GUERON REISBAUM LLP
        220 Fifth Avenue, 14th Floor
        New York, NY 10001
        By:  Emily Reisbaum, Esq.
        Nicole Gueron, Esq.
        Ashleigh Hunt, Esq.

        Attorneys for Defendant

        SMITH, GAMBRELL & RUSSELL, LLP
        1301 Avenue of the Americas, 21st Floor
        New York, NY 10019
        By:  Michael P. Regan, Esq.

**Sweet, D.J.**

Plaintiff 28th Highline Associates, L.L.C. ("Plaintiff" or "Highline") has moved for judgment on the pleadings pursuant to Fed. Rule Civ. P. 12(c) and for fees and costs pursuant to the parties' agreement.

Plaintiff seeks the release of a deposit on a luxury apartment pursuant to a written agreement between the property seller and purchaser after the Defendant failed to close on the purchase. Under the agreement dated December 2015 (the "Agreement"), Defendant agreed to purchase from Plaintiff a condominium apartment, a storage unit, and a parking space in a building then under construction in Manhattan. As required, Defendant placed a 20 percent deposit on the property, in the amount of $2,113,000.00, to be held in escrow until the closing of title and Defendant's transfer to Plaintiff (the sponsor/seller) of the remainder of the purchase price.

When construction completed in July 2017, Plaintiff notified Defendant of the scheduled closing date, but Defendant did not close on the sale within the time prescribed by the Agreement. Pursuant to the Agreement, Plaintiff issued a notice

1

of default on November 9, 2017, giving Defendant 30 days to cure and close. Defendant failed to close within the prescribed cure period.

After fruitless discussions between the parties, on January 19, 2018, Plaintiff wrote Defendant that it was planning to terminate the Agreement pursuant to its explicit termination provisions. In response, Defendant issued a notice to the escrow agent claiming that he was fraudulently induced into the Agreement through alleged oral misrepresentations, and instructed the escrow agent to hold the deposit. On January 24, 2018, Plaintiff terminated the Agreement and demanded that the escrow agent release the deposit. However, under the Agreement, the escrow agent may not release the deposit until either: (1) the parties jointly execute a statement in writing directing that it be released; or (2) a final, non-appealable order or judgment of a court is entered. This action therefore ensued seeking release of the deposit. The Defendant filed counterclaims alleging fraudulent inducement and repudiation. Based upon the conclusions set forth below, the motion of the Plaintiff is granted, and the cross-motion of the Defendant is denied.

## I. Prior Proceedings and Allegations

In 2014, construction began on 520 West 28th
Condominium (the "Condominium"), located at 520 West 28th
Street, New York, NY 10001 (the "Building"). (Declaration of
Emily Reisbaum, dated May 25, 2018 ("Reisbaum Decl.") Ex. 1
("Compl."), ¶¶ 2, 15, 17). The Building was designed by the
Pritzker Prize-winning architect Zaha Hadid and is located
immediately adjacent to the High Line. (Id. ¶ 16). Plaintiff,
the sponsor under the offering plan of the Condominium, began
listing planned apartments for sale while construction of the
Building took place. (Id. ¶¶ 15, 17). One planned apartment was
Unit 33 (the "Apartment"), a three-bedroom apartment located on
the 17th floor of the Building. (Id. ¶ 17).

Defendant is a non-citizen who resides in Gibraltar.
(Reisbaum Decl. Ex. 2 ("Roache Decl."), ¶ 1). He is the Chairman
of Domain Venture Partners, where he manages a structured
investment fund for experienced investors. (Id. ¶¶ 11-12). In
December 2015, with the advice of two lawyers (his in-house
counsel and a specialized New York City real estate attorney),
Defendant agreed to buy the Apartment and related property. (See
Reisbaum Decl. Ex. 3, Plaintiff's Reply to Counterclaims
("Reply"), ¶ 8; Ex. M). The purchase was documented in an

3

agreement and related riders, dated and executed on December 22, 2015 (altogether the "Agreement"). (Compl. Ex. A). The Agreement explicitly incorporated by reference the Condominium's offering plan (the "Offering Plan"), which provided additional details regarding the Building and the Apartment. (Id. at ¶ 11.2). Defendant received a copy of the Offering Plan, and all amendments. (Id. at ¶ 11.1; see also Reisbaum Decl. Ex. 4, ("Answer") ¶ 20).

Defendant agreed to purchase the Apartment for $9,795,000.00. (Compl. Ex. A. ¶¶ 2, 3.1). He also agreed to purchase licenses for the right to a storage unit (the "Storage Vault") and parking space (the "Parking Space") (the Apartment, Storage Vault License, and Parking Space License altogether, the "Property"), in the Building for $250,000 and $520,000 respectively, for a total of $10,565,000.00 (the "Purchase Price.") (Compl. Ex. A. Rider to Agreement Re: Storage Vault License ¶ 1.A; Rider to Agreement Re: Parking Space License ¶ 1.A.).

Defendant agreed that he would place a 20% deposit on the Property, in the amount of $2,113,000.00 (the "Deposit"), at the date of signing, to be held in escrow by Levitt & Boccio, LLP (the "Escrow Agent"), until the close of title on the

4

Apartment (the "Closing"). (Compl. Ex. A. ¶¶ 3.1, 4.1; Rider to Agreement Re: Storage Vault License ¶ 1.B; Rider to Agreement Re: Parking Space License ¶ 1.B.; Escrow Rider ¶ 10). Plaintiff would designate the date of the Closing on 30 days' notice, subject to Defendant's right to "one (1) adjournment of the closing for a period not to exceed thirty (30) calendar days[.]" (Compl. Ex. A. ¶ 5.1, see also Rider to Purchase Agreement ¶ A). At the Closing, Defendant would pay the balance of the Purchase Price, $8,452,000.00, to Plaintiff, the Escrow Agent would release the Deposit to Plaintiff, and Defendant would receive the deed to the Apartment. (Id. ¶ 3.1(b); Escrow Rider ¶ 10(a)).

The Agreement defined certain events that would constitute Defendant's default under the contract (an "Event of Default"), and the consequences stemming therefrom. (Id. ¶ 12). Defendant's failure to pay the Balance on the closing date designated by Plaintiff, after the expiration of all adjournment rights granted to Defendant, constituted an Event of Default. (Id. ¶ 12; see also Rider to Purchase Agreement ¶ A, B).2 After Plaintiff had given Defendant notice of the same, the Agreement provided Defendant an additional 30 days to cure, during which time was "of the essence." (Compl. Ex. A. ¶ 12(b)). If Defendant failed timely to cure, Plaintiff had "sole discretion" to cancel the Agreement, and as its sole remedy, the right to retain as

5

liquidated damages the Deposit and any interest earned thereon. (Id.). The Agreement also gave Plaintiff sole discretion not to strictly enforce the cure period without waiving any of its Default rights, such that Plaintiff could subsequently invoke the default provisions for Defendant's failure timely to close. (Id. at ¶ 30.)

The Parties explicitly agreed that neither would challenge the validity of the Agreement with respect to the liquidated damages, nor Plaintiff's right to retain the Deposit in the event of Defendant's default. (Id. ¶ 12(d).) This damages provision was agreed to "VOLUNTARILY, AFTER NEGOTIATION, WITHOUT DURESS OR COERCION BY ANY PARTY UPON ANY OTHER PARTY," and with each party having been, or having the full and adequate opportunity to be, represented and advised by "COUNSEL, ACCOUNTANTS, BROKERS, APPRAISERS AND OTHER EXPERTS AND ADVISORS OF ITS OWN CHOOSING." (Id.) Defendant was in fact represented by counsel, Jesse Gordon of Costello & Gordon LLP, during the Agreement's negotiation, as well as his in-house counsel. (Reply, ¶ 8; Ex. M.)

In addition to the representations in the Agreement and Offering Plan, Defendant agreed that he had not relied on any other representations, warranties, architect's plans,

6

statements, or estimates, written or oral, in deciding to enter
into the Agreement, and that this provision would survive
closing of title or termination of the Agreement. (Compl. Ex. A.
¶ 20). The parties also agreed that the Agreement could not be
orally modified. (Id. ¶ 42). Instead, any changes were required
to be set forth in a separate written agreement signed by the
parties and referring to the Agreement. (Id.) No such separate
agreement exists. (Answer, Counterclaims ¶ 16 ("the parties
never agreed to terms on any of these subjects"); see also Reply
¶ 16 (substantially same)).

Finally, the Agreement contained a one-way fee-
shifting clause, which provided that if Defendant defaulted, he
would be obligated to reimburse the Plaintiff, among others, for
any legal fees and disbursements it incurred in enforcing its
rights thereunder. (Compl. Ex. A. ¶ 35). This provision also
survives the termination of the Agreement. (Id.).

The Agreement, and its associated Riders, was executed
on December 22, 2015. (Compl. Ex. A). On or about December 21,
2015, Defendant, through his attorneys, paid the Deposit.
(Answer ¶ 33). The Deposit was then transferred into an
individual escrow sub-account in Defendant's name, within the
Escrow Agent's master escrow account. (Compl. ¶ 33).

With construction complete, on June 21, Plaintiff notified Defendant that the Closing was scheduled to occur on July 24, 2017. (Compl. Ex. C). Pursuant to the Agreement, on July 18, 2017, Defendant elected to exercise his right to adjourn the closing date by 30 days, further requesting that the closing occur at a "mutually agreeable date and time no later than August 23, 2017 at 2:00 P.M." (Compl. Ex. D; see also Answer ¶ 10).

Defendant did not close title on or before August 23, 2017, or any time thereafter. (Compl. ¶ 37; see also Answer ¶ 37 (averring "that no closing occurred on or before August 23, 2017"); ¶ 40 (denying that Defendant "improperly" failed to close)).

On September 8, 2017, Gregory Gushee ("Gushee"), the development head of the Condominium, emailed Defendant and stated, "[b]efore our lawyer sends a default notice, I wanted to reach out to you to find out what your intentions are." (Reply Ex. A.) Defendant replied the next day, "[m]y intention is to close." (Id.) Plaintiff's counsel sent Defendant's counsel, Jesse Gordon, a proposed amendment to the Agreement on October 12, 2017, which proposed an extension of the Closing Date to

8

January 5, 2018. (Reply. Ex. N.). However, on October 26, 2017,
Gushee wrote Defendant, "[w]e have not heard from you on the
amendment to extend closing date. Please let us know how you
would like to proceed as cannot [sic] extend without an
amendment. If we do not hear back from you, we will have to send
a default notice." (Reply Ex. C. at 2). Defendant wrote back the
same day, "[w]e will be closing in the New Year but we will have
some proposed changes to the amendment.... Jesse [Gordon,
Defendant's counsel] will loop back to you early next week."
(Id. at 1). On October 31, 2017, Gushee replied: "do you have
comments to the agreement? ... we need to do the amendment now.
Thank you." (Id.) Once again, Defendant stated that he would
discuss with his attorney and "loop back within 24 hours." (Id.)

On November 9, 2017, Plaintiff sent Defendant a Notice
of Default (the "Notice"), pursuant to Paragraph 12(b) of the
Agreement. (Compl. Ex. E). The Notice alerted Defendant that his
failure to close title constituted an Event of Default, as
defined by the Agreement, and that "[a]ll periods of adjournment
to which [Defendant] was entitled under the Complete Agreement
have also been exhausted." (Id.). It stated that Defendant's
failure to cure within 30 days would result in Plaintiff
exercising its remedies under the Agreement, including retention

9

of the Deposit, all interest earned thereon, and cancellation of
the Agreement. (Id.).

On November 16, 2017, Defendant wrote Gushee, "[w]e
are obviously disappointed to have received a default notice.
However, we would like to confirm the following: I still want to
close. I am working with HSBC and they have advised that they
can close the loan by end of February.... I would like the close
date in a revised adjournment agreement to reflect this new
date" (Reply Ex. D). Gushee wrote back, "[g]lad you still want
to move forward. Can you close before end of January?" (Id.)
Defendant replied on November 22, 2017, "[w]e will start to look
for an alternate lender so that we can close by end January."
(Reply Ex. E. at 2).

On December 4, 2017, Plaintiff's counsel sent
Defendant and his counsel a revised draft of the proposed
amendment, setting a new Closing Date of February 28, 2018 and
stating, "[a]s the cure period under the Notice of Default will
expire shortly, your prompt attention is appreciated." (Reply
Ex. E.) On December 11, 2017, Gushee wrote again: "[f]ollowing
up on the lease amendment. Any comments? We need to finalize."
(Reply Ex. F). The same day, Defendant's counsel wrote back,

10

"[u]nderstood. I will be discussing with [Defendant] and getting back to you and Jeff [Levitt, counsel to Sponsor] ASAP." (Id.)

On December 20, 2017, Gushee wrote Defendant informing him that Plaintiff had negotiated an extension of the deadline to close with their own lender, which meant that Defendant could close at the end of February, as he had requested. (Reply Ex. G). That day, Jeff Levitt, counsel to Sponsor ("Levitt") sent a revised draft of the proposed amendment, setting a new Closing Date as February 28, 2018, and stating, "[a]s the cure period for your default has now expired, [Mr. Gushee] has asked me to advise you that if we do not receive the signed amendment and funds by 5:00PM on Friday, December 22, 2017, [Plaintiff] will be terminating the contract and we will release the deposit to [Plaintiff] in accordance with the Escrow Agreement." (Reply Ex. H.) Defendant's counsel responded, "[r]eceived-thank you!" (Reply Ex. I.) Defendant never signed the amendment nor transmitted the funds. Plaintiff and Defendant never agreed to these terms or a new Closing Date. (Answer ¶ 16; Reply ¶ 16.)

On January 8, 2018, Gushee wrote Defendant stating, "[w]e have not heard from you regarding the contract amendment or closing. The deadline was before the holidays… now we must do something. [I]f you need another day to execute the amendment

11

and send wire then ok. Otherwise, unfortunately we have no choice but to terminate the contract. Please let me know how you are planning to proceed." (Reply Ex. J). Eleven days later, on January 19, 2018, Gushee wrote again, stating: "Iain—[s]ince you are not responding we have no choice but to terminate the contract. We will do so on Monday. If you want to reach me over the weekend please do." (Id.) An hour later, Michael Regan ("Reagan"), Defendant's counsel, emailed a letter to Levitt rejecting Plaintiff's right to the Deposit and instructing it not be released to Plaintiff, unless and until directed otherwise by a court of law. (Compl. Ex. F; see also Reply Ex. K.)

On January 24, 2018, Plaintiff sent Defendant a Notice of Termination of the Agreement (the "Termination"). (Reply Ex. L). The Termination stated that "[a]ll periods for [Defendant] to cure the Event of Default, and a reasonable time thereafter, have since tolled and expired," and that Plaintiff was electing to cancel the Agreement pursuant to Paragraph 12. (Id.). The Termination also relayed that, under the Agreement, Plaintiff was entitled to the Deposit as its liquidated damages, and demanded that the Escrow Agent release the Deposit. (Id.). Plaintiff also issued a separate letter to the Escrow Agent making the same demand. (Complaint Ex. G).

12

The Escrow Agent notified Defendant of its receipt of Plaintiff's demand for the Deposit. (Id.). The Escrow Agent, however, is not permitted to release the Deposit unless so directed either by a writing signed by both parties, or a final, non-appealable order or judgment of a court. (Compl. Ex. A. Escrow Rider ¶ 10).

Plaintiff filed this action on February 19, 2018, alleging breach of contract and seeking, in the alternative, declaratory judgment that the Escrow Agent release the Deposit to Plaintiff. (See Compl.). On May 4, 2018, Defendant filed his Answer, Affirmative Defenses, and Counterclaims alleging repudiation and fraud in the inducement. (Answer.) On May 25, 2018, Plaintiff filed its Reply. (Reply.)

The instant motion and cross-motion were heard and marked fully submitted on July 18, 2018.

## II.  The Applicable Law and Standard

The parties are citizens of diverse states: Plaintiff is a Delaware corporation with its principal place of business in New York; Defendant is an individual who resides in

Gibraltar. (Compl. ¶ 10; Answer ¶ 11.) As a result, this Court has jurisdiction pursuant to 28 U.S.C. § 1332; New York law governs the Agreement. (Compl. Ex. A ¶ 32.)

Federal Rule of Civil Procedure 12(c) provides that "[a]fter the pleadings are closed... a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "On a 12(c) motion, the court considers the complaint, the answer [and] any written documents attached to them . . ." *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 422 (2d Cir. 2011) cited by *Lexon Ins. Co. v. Wells Fargo Bank*, 619 Fed.Appx. 27, 28 (2d Cir. 2015) (affirming 12(c) dismissal where court considered documents attached to defendant's answer); *Neopham Ltd. v. WyethAyerst Int'l LLC*, 170 F.Supp.3d 612, 614-15 (S.D.N.Y. 2016) (granting 12(c) motion, considering written documents attached to the answer, and noting that "[j]udgment on the pleadings is particularly appropriate in a dispute regarding a breach of contract where the primary issue is determining the parties' legal rights and obligations") citing *VoiceAge Corp. v. RealNetworks, Inc.*, 926 F.Supp.2d 524, 529 (S.D.N.Y. 2013). The Court can also consider "documents that are in the [] possession" of the party opposing the motion. *PPI Enterprises (U.S.), Inc., v. Del Monte Foods Co.*, 2000 WL 1425093, at * 1, (S.D.N.Y. Sept. 26, 2000).

14

A motion pursuant to Rule 12(c) may be granted "where [the] material facts are undisputed and where judgment on the merits is possible merely by considering the contents of the pleadings." *Sellers v. M.C. Floor Crofters, Inc.*, 842 F.2d 639, 642 (2d Cir. 1988) (citations omitted). Like a motion pursuant to Rule 12(b)(6), judgment shall be granted where "the moving party 'is entitled to judgment as a matter of law.'" *Smickle v. City of New York*, 2018 WL 1578381, at * 3 (S.D.N.Y. March 29, 2018) quoting *Richards v. Select Ins. Co.*, 40 F. Supp. 2d 163, 165 (S.D.N.Y. 1999). To survive such a motion, Defendant's answer and counterclaims "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 622, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

## III. The Motion of Plaintiff for Declaratory Judgment is Granted

The pleadings reveal no dispute about the terms governing the parties' conduct: the Agreement conclusively determines the parties' rights and responsibilities. Plaintiff was prepared to deliver the Property and thus demanded that

15

Defendant close; Defendant failed to close by the Agreement's deadlines; the parties discussed closing even after all the deadlines had passed; but the parties at no time modified the Agreement, which entitles Plaintiff to terminate and obtain the Deposit, and the costs and fees incurred by this action. See, e.g., *Stokes v. Lusker*, No. 08 CIV. 3667 (CM), 2009 WL 612336, at *2 (S.D.N.Y. Mar. 4, 2009) (dismissing purchaser's various claims for co-op deposit on 12(b)(6) and 12(c) motions where "the liquidated damages clause[] provide[d] that the [seller] could keep the $250,000 deposit if the plaintiff failed to close… [h]e did not close. The reason is irrelevant."), affd, 425 F. App'x 18 (2d Cir. 2011).

There is no dispute that the Agreement exclusively and conclusively controls the parties' rights and responsibilities. Defendant admitted as much. In response to each paragraph of the Complaint in which Plaintiff described the Agreement, Defendant referred the Court to the terms of the Agreement itself. (See Answer ¶¶ 2, 4-5, 7, 18-32, 34-36, 38, 44-45, 50, 56, 60-62, 66.) The parties denounced reliance on any written or oral communications conveyed prior to or simultaneously with the execution of the Agreement (Compl. Ex. A. ¶ 38), and looking forward, agreed to be bound only by additional writings signed

16

by the parties. (Id. ¶ 42). Apart from the Agreement, no such other writing exists. (Answer ¶ 16).

In a breach of contract claim, contractual interpretation is a question of law, and "[a] written agreement that is complete, clear and unambiguous on its face must be enforced according to the plain meaning of its terms." *VoiceAge Corp.,* 926 F. Supp. 2d at 529-30 (granting motion for judgment based on contract's unambiguous terms), quoting *Greenfield v. Philles Records*, 98 N.Y.2d 562, 569 (2002).

A contract is unambiguous "if the language it uses has a definite and precise meaning, as to which there is no reasonable basis for a difference of opinion." *Neopharm Ltd.,* 170 F. Supp. 3d 615 (S.D.N.Y. 2016) (granting plaintiff's motion for judgment on the pleadings and to dismiss counterclaim), quoting *Lockheed Martin Corp. v. Retail Holdings, N.V.,* 639 F.3d 63, 69 (2d Cir. 2011).

Here, unambiguously, the Agreement provides:

1.    Defendant to pay a total deposit of $2,113,000.00 to be held in escrow (Complaint Ex. A. ¶¶ 3.1, 4.1; Rider to Agreement Re: Storage Vault License ¶ 1.B;

Rider to Agreement Re: Parking Space License ¶ 1.B.;
Escrow Rider ¶ 10);

2.   Plaintiff has the right to set the closing date
and time, allowing Defendant one adjournment of not
more than 30-days (Complaint Ex. A. ¶ 5.1, see also
Rider to Purchase Agreement ¶ A);

3.   Defendant's failure to pay the balance of the
purchase price and costs upon closing or to perform
any of his obligations constitute an Event of Default
(Complaint Ex. A. ¶ 6.1; 12);

> • in such case, if Defendant fails
> to cure within 30 days, Plaintiff shall have the
> right to cancel and retain the deposit as
> liquidated damages (Id. ¶ 12(b)); and

> • Defendant agrees not to challenge
> Plaintiff's right to retain the deposit as
> liquidated damages (Id. ¶ 12(d));

4.   Defendant is responsible for all costs incurred
by Plaintiff to enforce its rights under the Agreement
(Id. ¶ 35);

18

5.   The written contract documents represent the
entire agreement between the parties relating to the
purchase of the Property (Id. ¶ 38);

6.   Defendant specifically agrees that he relied on
no representations □ Defendant specifically agrees
that he relied on no representations or warranties
except those specifically contained in the Agreement
(Id. ¶ 20); and

7.   The Agreement could not be orally modified, but
rather only by a writing signed by the parties and
referring to the Agreement (Id. ¶ 42).

With the parameters of the Agreement established, the
Court's "primary objective is to give effect to the intent of
the parties as revealed by the language" in the Agreement. *UMB
Bank, Nat'l Ass'n v. Airplanes Ltd.*, 260 F. Supp. 3d 384, 393
(S.D.N.Y. 2017) (granting plaintiff's 12(c) motion for
judgment), quoting *Bolt Elec., Inc. v. City of New York*, 223
F.3d 146, 150 (2d Cir. 2000).

If the contract is unambiguous, the Court may award
judgment on the pleadings, assuming no "material" facts are in

dispute. *Neopharm Ltd.*, 170 F. Supp. 3d 615. No material facts concerning the conduct of the parties are disputed here: after Plaintiff set the closing date, Defendant was permitted and requested one 30-day extension, and then failed to purchase the Apartment. Under the Agreement, Defendant has forfeited his right to the Deposit.

Since 1881, New York law on this issue has been clear: "a vendee who defaults on a real estate contract without lawful excuse, cannot recover the down payment." *Maxton Bldrs. v. Lo Galbo*, 68 N.Y.2d 373, 378 (1986) citing *Lawrence v. Miller*, 86 N.Y. 131, 139-40 (1881).

> To allow a recovery of this money would be to
> sustain an action by a party on his own breach of
> his own contract, which the law does not allow.
> When we once declare in this case that the vendor
> has done all that the law asks of him, we also
> declare that the vendee has not so done on his
> part. And then to maintain this action would be
> to declare that a party may violate his
> agreement, and make an infraction of it by
> himself a cause of action. That would be ill
> doctrine.

*Lawrence*, 86 N.Y. at 140.

As New York courts have noted, if real estate buyers are "dissatisfied with [such terms], the time to say so is at

the bargaining table." *Maxton Bldrs.*, 68 N.Y.2d at 382. As the
Agreement shows, Defendant accepted this rule. (Compl. Ex. A.
¶ 12.) Throughout New York State, courts will deny a down
payment refund when the purchaser has defaulted, regardless of
whether the down payment was 10%, 25%, or even 50% of the
purchase price. See *Uzan v. 845 UN Limited Partnership*, 10
A.D.3d 230, 237 (1st Dep't 2004) (25% down payment), citing
*Chateau D'If Corp. v. City of New York*, 641 N.Y.S.2d 252, lv.
denied 88 N.Y.2d 811, (1st Dep't 1996); *Armas v. Yuska*, 768
N.Y.S.2d 641 (2nd Dep't 2003); *Collar City Partnership v.
Redemption Church*, 651 N.Y.S.2d 729 (3rd Dep't) (50% down
payment), lv. denied 661 N.Y.S.2d 179; *Badame v. Bock Enters.,
Inc.*, 593 N.Y.S.2d 384 (4th Dep't 1993) (more than 10% down
payment).

Such deposits have been refunded only upon "a showing
of disparity of bargaining power between the parties, duress,
fraud, illegality or mutual mistake." *Uzan*, 10 A.D.3d at 237
(reversing denial of seller's motion for summary judgment). This
Agreement was the product of months-long negotiation, between
sophisticated parties, both represented by counsel of their
choosing. (Compl. Ex. A. ¶ 12(d); see also Reply Ex. M.) The
parties have disclaimed any reliance on any understanding
entered into prior or simultaneously with the Agreement that was

21

not contained in the Agreement itself. (Id. ¶¶ 18, 20).
Defendant has not put forth a genuine issue as to any material
fact that would justify his refusal to permit the Escrow Agent
to release the deposit to Plaintiff.

Defendant argues that, even if his cross-motion is
denied, Plaintiff is not entitled to judgment on its affirmative
claims. Plaintiff's pleadings demonstrate an ability to close on
the Closing Date designated by the closing notice; and Defendant
has failed to raise a plausible claim to the contrary. Because
Defendant in the Agreement specifically disclaimed reliance upon
the very same representations he now claims he was fraudulently
induced by, and because Defendant, by his own admission, is a
sophisticated businessman represented by counsel in the parties'
negotiations, the Agreement's merger clause bars that claim.

Defendant also argues that Plaintiff's motion cannot
succeed because the Complaint: (1) does not allege that
Plaintiff was ready, willing and able to close on any date; and
(2) he is entitled to further discovery to "learn and test"
Plaintiff's proof that it was ready, willing, and able to close.
Both arguments are unavailing.

Contrary to Defendant's claim, the Complaint pleads, and the record suggests, that Plaintiff was ready, willing, and able to close on the "Closing Date" (erroneously defined as "June 21, 2017,") (Reisbaum Decl. Ex. 1 at Ex. E at 1; Ex. 3 at ¶ 22). As with a 12(b)(6) motion for failure to state a claim, in determining a Rule 12(c) motion, courts may consider the facts alleged in the pleadings, as well as "documents that are attached to or incorporated by reference in the pleadings, and documents not incorporated in, but integral to, the pleadings." Gov't Employees Ins. Co. v. Saco, No. 12 Civ. 5633, 2015 WL 1527611, at *3 (E.D.N.Y. Mar. 31, 2015), citing Daniels ex rel. *Daniels v. Comm'r of Soc. Sec.*, 456 F. App'x 40, 41 (2d Cir. 2012) (summary order).

Defendant's pleadings offer little more than speculation in response to Plaintiff's well-pled facts. This is insufficient to defeat Plaintiff's motion. Defendant's Counterclaims, for example, state that the Notice of Default "does not indicate that Highline was ready, willing and able to close on July 24, 2017, let alone by August 23, 2017." (Reisbaum Decl. Ex. 4, Counterclaims ¶ 22). This is clearly contradicted by the Notice of Default: "[o]n the Closing Date, and at all time since, [Plaintiff] was ready, willing and able to convey

title to the Unit and perform all of its obligations under the Complete Agreement." (Reisbaum Decl. Ex. 1 at Ex. E at 1).

Defendant does not allege any facts that plausibly rebut Plaintiff's pleadings. *E.E.O.C. v. ·Kelley Drye & Warren, LLP*, No. 10 Civ. 655 (LTS) (MHD), 2011 WL 3163443, at *2 (S.D.N.Y. July 25, 2011) (applying 12(b)(6) plausibility standard to affirmative defenses and granting 12(f) motion to strike in part, because "it has long been held that affirmative defenses that contain only 'bald assertions' without supporting facts should be stricken"); citing *Shechter v. Comptroller of City of New York*, 79 F.3d 265, 270 (2d Cir. 1996) (stating on 12(c) motion that "affirmative defenses which amount to nothing more than mere conclusions of law and are not warranted by any asserted facts have no efficacy") (internal quotations omitted).

Defendant's answer, affirmative defenses, and counterclaims do not include factual material to state a "plausible" claim to relief. Defendant has simply not pled any facts to defeat Plaintiff's evidence that it was ready, willing, and able to close. See *Neopharm Ltd. v. Wyeth-Ayerst Int'l LLC*, 170 F. Supp. 3d 612, 620 (S.D.N.Y. 2016) (granting plaintiff's motion for judgment on the pleadings, and dismissing counterclaim, where defendant's interpretation of a document

24

failed to state a "plausible" claim that defendant had right to terminate agreement).

While Defendant contends that the Court should infer that Plaintiff was not ready, willing, and able to close because Plaintiff "allowed several months to pass" before sending the Notice of Default, his pleadings fail to rebut the fact that Plaintiff demonstrated a readiness to close by sending the Notice of Closing Date on June 21, 2017, scheduling closing for July 24, 2017. (Reisbaum Decl. Ex. 1 at Ex. C at 1). Plaintiff's pleadings show that the only reason Plaintiff delayed sending the Notice of Default was because it mistakenly believed that Defendant would timely close. (Reisbaum Decl. Ex. 3 at Exs. A-D).5

In sum, Defendant raises the "mere possibility," that Plaintiff was not ready, willing, and able to close on this date. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). Without more, Defendant has alleged—but has not "show[n]"—"that [he] is entitled to relief." Id. Absent such a showing, his resistance to Plaintiff's motion for judgment on the pleadings is insufficient, and Plaintiff's motion should be granted.

**The Cross-Motion of the Defendant for Declaratory Judgment is Denied**

First Defendant has claimed that Plaintiff breached the Agreement by repudiating its obligations. However, a repudiation claim cannot lie where the claimant fails to state a claim for breach of contract. *DiFolco*, 831 F. Supp. 2d at 641 (anticipatory repudiation excuses the non-breaching party from performance where the breaching party has indicated that he "will commit a breach that would of itself give the obligee a claim for damages for total breach" or has committed a "voluntary affirmative act which renders the obligor unable or apparently unable to perform without such a breach"), citing *Norcon Power Partners, L.P. v. Niagara Mohawk Power Corp.*, 92 N.Y.2d 458, 463 (1998). Defendant states no such claim. Defendant has failed to plead that he was ready, willing, and able to perform his obligations under the contract—to close on the Apartment—at the time of Plaintiff's supposed breach. See *Record Club*, 890 F.2d at 1275 (the party asserting repudiation bears the burden of proving its own performance); *Tradax Energy, Inc. v. Cedar Petrochemicals, Inc.*, 317 F.Supp.2d 373, 377 (S.D.N.Y. 2004).

The doctrine of anticipatory repudiation permits the non-breaching party to elect to state a claim for breach of

contract at the time of a repudiation, instead of at the time for performance. *Lucente v. Int'l Bus. Machines Corp.*, 146 F. Supp. 2d 298, 317 n.5 (S.D.N.Y. 2001). It is therefore dependent on the existence of a material breach of contract. *DiFolco*, 831 F. Supp. 2d at 641 (S.D.N.Y. 2011); see also *De Forest Radio Tel. & Tel. Co. v. Triangle Radio Supply*, 243 N.Y. 283, 153 N.E. 75, 78 (1926).

Plaintiff's supposed repudiatory acts—issuing the Notice of Termination and instructing the Escrow Agent to release the deposit (see Counterclaims ¶¶ 30-34)—are acts within Plaintiff's discretion under the Agreement once Defendant failed to close on the Apartment within 30 days of receiving the Notice of Default. (Compl. Ex. A. ¶ 12(b), (d)). Nothing contained within Defendant's pleadings rebut this. Defendant did not close on the Apartment by December 9, 2017, which was 30 days after he received the Notice of Default. (Complaint Ex. E.; see also Answer ¶ 38). Therefore, it was he, not the Plaintiff, who was in breach of the Agreement at the time the Notice of Termination issued.

Because Defendant fails to state a claim for breach, he cannot state a claim for anticipatory breach. *Chatsworth Realty 344 LLC. v. Hudson Waterfront Co. A, LLC.*, Index No.

10999/2002, 2003 WL 1085888, at *6 (N.Y. Sup. Mar. 4, 2003)
("Given that the court has found no basis for a claim of breach
of the applicable agreements, this claim [for anticipatory
breach] is found wanting.") aff'd 309 A.D.2d 567 (1st Dep't
2003); *Metro. Suburban Bus Auth. v. Cty. Of Nassau*, Index No.
451042/2012, 2013 WL 4526021 at *4 (N.Y. Sup. Aug. 26, 2013)
("an anticipatory breach of contract. . . occurs before
performance of a contractual duty is due ... [where Defendant]
owes no duty under the Agreement, and there can be no
anticipatory repudiation of a duty not owed") (internal
citations omitted).

        In any event, Defendant's repudiation claim fails
because he has not pled that he had the requisite "willingness
and ability to perform before the repudiation and that [he]
would have rendered the agreed performance" if not for
Plaintiff's supposed repudiation. *Randolph Equities, LLC v.
Carbon Capital, Inc.*, 648 F. Supp. 2d 507, 519 (S.D.N.Y. 2009),
citing *United States v. Hon Yee-Chau*, 17 F.3d 21, 26 (2d Cir.
1994). A claimant must so plead because because it is
"axiomatic" that damages for breach of contract are not
recoverable where they were not actually caused by the breach.
*Pesa v. Yoma Dev. Grp., Inc.*, 18 N.Y.3d 527, 532 ability to
perform is supported by common sense.") Nowhere does Defendant

28

state that he was ready, willing, and able to close on the Apartment when Plaintiff issued the Notice of Termination on January 24, 2018. (See generally, Counterclaims). The anticipatory repudiation claim is dismissed.

Defendant's claim for fraudulent inducement also fails because (1) it is entirely dependent on alleged oral misrepresentations (Counterclaims ¶¶ 4-8), yet (2) in signing the Agreement, Defendant specifically disclaimed reliance on any such representations and affirmed that the written Agreement reflected the parties' entire agreement with respect to the Property. (Compl. Ex. A ¶¶ 20, 38.) There are "venerable principles" of New York law on this point. *Aetna Cas. and Sur. Co.*, 404 F.3d at 575 (2d Cir. 2005) (referring to the principles laid out in *Danann Realty Corp. v. Harris*, 184 N.Y.S. 2d 597 (1959)).

"Under the New York law of fraudulent inducement, 'a specific disclaimer [in an agreement] destroys the allegation in [a] plaintiff's complaint that the agreement was executed in reliance upon . . . contrary oral representations.'" *Warner Theatre Assocs. Ltd Partnership v. Metro. Life Ins. Co.*, 149 F.3d 134, 136 (2d Cir. 1998) quoting *Danann*, 184 N.Y.S. 2d at 320-21; see also *Harmit Realties LLC v. 835 Avenue of the*

29

*Americas*, 135 A.D.3d 564, 564-65 (1st Dep't 2016) (affirming dismissal of fraudulent inducement claim based on disclaimers in agreement).

Permitting such a claim in these circumstances "would allow the plaintiff to 'deliberately misrepresent' its purported non-reliance in the contract, and would make it impossible for 'two businessmen dealing at arm's length to agree that the buyer is not buying in reliance on any representations of the seller as to a particular fact.'" *Aetna Cas. and Sur. Co.*, 404 F.3d at 575. "For a contract term to be sufficiently specific under this standard, there need not be a 'precise identity between the misrepresentation and the particular disclaimer.'" Id., at 576 quoting *Grumman Allied Industries, Inc. v. Rohr Industries, Inc.*, 748 F.2d 729, 735 (2d Cir. 1984). "Rather, '[t]he Danann rule operates where the substance of the disclaimer provisions tracks the substance of the alleged misrepresentations, notwithstanding semantical discrepancies.'" Id. "The specificity requirement is further relaxed when the contracting parties are 'sophisticated business people,' and the disclaimer clause is the result of negotiations between them." Id. (quoting *Citibank, N.A. v. Plapinger*, 495 N.Y.S.2d 309, 311-12 (1985)).

Alleged oral representations about facts or events yet

to occur are not actionable. *Wild Bunch, SA v. Vendian Entm't,*

*LLC*, No. 17 CIV. 1383, 2018 WL 1365690, at \*3 (S.D.N.Y. Feb. 26,

2018) (granting, inter alia, partial judgment on pleadings),

citing *Cohen v. Koenig*, 25 F.3d 1168, 1172 (2d Cir. 1994)

(noting that "statements will not form the basis of a fraud

claim when they are mere 'puffery' or are opinions as to future

events"); see also *Stewart v. Jackson & Nash*, 976 F.2d 86, 89

(2d Cir. 1992).



Defendant alleges three oral misrepresentations: (1)

the Building was 60-70% sold out; (2) the Sponsor had a present

plan to increase prices by 8 to 12%, though the alleged increase

had not gone into effect; and (3) Ms. Hadid, the Building's

architect, had committed to purchasing the apartment directly

above the one Defendant was interested in. (Counterclaims ¶ 5.)

Each of these alleged misrepresentations are disclaimed in the

Agreement, wherein Defendant promised:

> Purchaser [(Defendant)] acknowledges that
> Purchaser has not relied upon any architect's
> plans, sales plans, selling brochures,
> advertisements, representations, warranties,
> statements or estimates of any nature whatsoever,
> whether written or oral, made by Sponsor, Selling
> Agent or otherwise, including, but not limited
> to, any relating to the description of physical
> condition of the Property, the Building or the

31

> Unit, . . . or any other data, except as herein
> or in the Plan specifically represented . . . No
> person has been authorized to make any
> representations on behalf of Sponsor. No oral
> representations or statements shall be considered
> a part of this Agreement.

(Compl Ex. A. ¶ 20.) Each of the alleged misrepresentations are
"sales plans," "representations," "estimates," and/or "data"—
upon all of which Defendant specifically promised not to rely.
The alleged misrepresentations further involve predicted events
set to occur in the future: prices would increase, but had not
yet; and Ms. Hadid had committed to purchase, but had not yet.

Moreover, Defendant is a sophisticated business
person: He "founded Domain Venture Partners, a structured
investment fund group," and he also was represented by counsel
throughout negotiations with Plaintiff. (Reply ¶ 8, Exhibit M.)
If these alleged misrepresentations were truly material to
Defendant, he certainly had the sophistication, guidance, and
means to ensure that the Agreement required Plaintiff to affirm
them. "[W]here ... a party has been put on notice of the
existence of material facts which have not been documented and
he nevertheless proceeds with a transaction without securing the
available documentation or inserting appropriate language in the
agreement for his protection, he may truly be said to have
willingly assumed the business risk that the facts may not be as

32

represented. Defendant cannot now complain that he has been defrauded when his own lack of due care is responsible for his predicament. *Lazard Freres & Co. v. Protective Life Ins. Co.*, 108 F.3d 1531, 1543 (2d Cir.1997) (citation and internal *Freres & Co. v. Protective Life Ins. Co.*, 108 F.3d 1531, 1543 (2d Cir.1997) (citation and internal quotation marks omitted); see also *St. Paul Mercury Ins. Co. v. M & T Bank Corp.*, No. 12 Civ. 6322(JFK), 2014 WL 641438, at *5 (S.D.N.Y., Feb. 19, 2014) ("Where the party asserting reliance is sophisticated, and the purported statement relates to a business transaction that has been formalized in a contract, New York courts are generally reluctant to find reliance on oral communications to be reasonable.") (internal quotation omitted); *DDJ Mgmt., LLC v. Rhone Grp. L.L.C.*, 905 N.Y.S.2d 118, 122, 15 N.Y.3d 147, 154 (2010) ("Indeed, there are many cases in which the plaintiff's failure to obtain a specific, written representation is given as a reason for finding reliance to be unjustified.").

Defendant was in default of the Agreement upon the expiration of all of his contractual adjournment rights. To avoid this default, Defendant now argues that he was entitled to an "indefinite" adjournment of the Closing Date, because Plaintiff did not send a "time is of the essence" letter setting a law day for closing.

33

Defendant's contention is defeated because the
Agreement contains a "time is of the essence" clause. (Reisbaum
Decl. Ex. 1 at Ex. A, § 12(b)). Defendant erroneously claims
that the Agreement's "time is of the essence" clause appears in
the Agreement "connect[ed] with a defined 'Event of Default',"
as though time were "of the essence" only once an Event of
Default had occurred. (Defendant's Memorandum of Law in
Opposition (Dkt. No. 32) ("Opp'n Br.") at 3.) However, that is
not what the Agreement says; it explicitly provides that time is
of the essence at all times as to all Defendant's obligations
under the Agreement:

> "TIME IS OF THE ESSENCE with respect to
> [Defendant's] obligations to pay the Balance and
> to pay, perform or observe [Defendant's] other
> obligations under this Agreement."

(Reisbaum Decl. Ex. 1 at Ex. A, § 12(b)). This clause
encompasses all of Defendant's obligations under the Agreement
and is not contingent on, or limited to, an Event of Default
occurring. See, e.g. *Sherman v. Real Source Charities, Inc.*, 41
A.D.3d 946, 947–48 (3d Dep't 2007) (finding that provision
providing that "[i]f the Buyer fails to perform this contract
within the time herein specified, time being of the essence of
this agreement, the deposit made by the Buyer shall be

34

forfeited," appearing in sentence describing the disposition of buyer's deposit in event of his default, applied by its terms "to the whole agreement"). Because the Agreement contains an unlimited "time is of the essence" provision, the majority of the cases Defendant cites on this are inapplicable. See, e.g., *N. Triphammer Dev. Corp. v. Ithaca Assocs.*, 704 F. Supp. 422, 429 (S.D.N.Y. 1989) (contract did not state that time was of the essence); *Mazzaferro v. Kings Park Butcher Shop, Inc.*, 121 A.D.2d 434, 435 (2d Dep't 1986) (same).

Based on the faulty premise that the Agreement did not make time of the essence, *see* discussion *supra*, Defendant argues that no "time-of-the-essence closing date" was set "because the Agreement afforded Mr. Roache the opportunity to adjourn the closing date." (Opp'n Br. at 4; see also at 9 ("the Rider to the Purchase Agreement amended Section 5.1 to enable [Defendant] to adjourn the initial closing date… [t]hus, the initial closing date of July 24, 2017 was not a time-of-the essence closing date[.]"). Therefore, Defendant claims, his Notice of Adjournment entitled him to an "indefinite adjournment of the initial closing date," because the outside date set by Defendant, "no later than August 23, 2017," was an "on or before" closing date, never scheduled, and "not time-of-the-essence." (Opp'n Br. at 10).

However, the fact that the Agreement gave Defendant the right to adjourn the Closing Date (one time, for no longer than thirty days) does not vitiate a valid "time is of the essence" clause. Courts will enforce time of the essence clauses in contracts that nonetheless grant one or both parties the right to extend or modify the date of closing. See, e.g. *Sherman*, 947-948 (purchaser defaulted under contract that specified (i) a closing date, (ii) "the circumstances under which that date [might] be extended," and (iii) that time was of the essence; and "[s]ince the contract expressly provides that time is of the essence, defendant's failure to timely tender performance placed it in default."); see also *Town House Stock LLC v. Coby Hous. Corp.*, 2007 WL 726839 (N.Y. Sup. Ct. 2007) \*3, 7-8 (enforcing "time is of the essence" provision of agreement and releasing down payment to seller despite contractual right of both seller and purchaser to adjourn the closing date of the sale up to June 15, 2006), aff'd, 49 A.D.3d 456 (1st Dep't 2008).

Defendant is held to the Closing Date his Notice of Adjournment set: "no later than August 23, 2017 at 2:00 P.M." (Reisbaum Decl. Ex. 1 at Ex. D). Where, as here, a contract sets an "on or before" closing date, but also states that time is of

36

the essence, courts hold that time is of the essence as to the contract's performance on or before that date. See, e.g., *Bardi v. Estate of Morgan*, 61 A.D.3d 625, 625 (2d Dep't 2009) ("[c]ontrary to [Defendant's] assertion that time was not of the essence due to the fact that the terms of sale only provided that the closing date would be "on or before 9/15/06," which language has been held not to be clear and unequivocal so as to render time of the essence . . . the terms of sale provided that 'time is of the essence with respect to the Closing Date as to the purchaser only.' Therefore, the contract clearly expressed that time was of the essence...."). Here, because the Agreement "clearly expresse[s] that time was of the essence," the "on or before" date must be complied with. Id.

Plaintiff did not need to send a time is of the essence letter setting a "law day" before holding Defendant in default because time already was of the essence under the Agreement. Defendant cites a string of cases in support of his argument that are inapposite because each explicitly found that the underlying purchase agreement did not have a "time is of the essence" clause. See, e.g. *Cave v. Kollar*, 296 A.D.2d 370, 371 (2d Dep't 2002) ("it is undisputed that there was no provision in the contract that time was to be of the essence"); *Tarlo v. Robinson*, 118 A.D.2d 561, 562 (2d Dep't 1986) ("[t]he contract

37

did not contain a provision stating that time was of the essence"); *ADC Orange, Inc. v. Coyote Acres, Inc.*, 7 N.Y.3d 484, 487 (2006) ("[t]he contract contained no time-of-the-essence clause and did not provide that ADC's failure to make the interim payment by December 31, 2001 would put it in default"); *Point Holding, LLC v. Crittenden*, 119 A.D.3d 918, 919 (2d Dep't 2014) (contract "[did] not make time of the essence"); *Levine v. Sarbello*, 112 A.D.2d 197, 197 (2d Dep't 1985) ("[t]he contract did not contain a "time is of the essence" clause"). Properly construed, these cases support Plaintiff's motion.

Built upon his contention that time was not of the essence and that a letter setting a law date was required to make it so—Defendant argues that the Notice of Default was improperly sent. (Opp'n Br. at 10-11.) The circumstances constituting an "Event of Default" by Defendant are explicitly enumerated in Section 12 of the Agreement, and Defendant does not challenge that he failed to "pay the Balance… on the Closing Date designated by Sponsor pursuant to Article 5 hereof[.]" (Reisbaum Decl. Ex. 1 at Ex. A, § 12(a)(i).) Therefore, under the Agreement, Plaintiff sent a Notice of Default warning him that his failure to close within 30 days would result in Plaintiff's exercise of its remedies under the Agreement,

including, inter alia, retention of the Deposit. (Id. § 12(b);
see also Reisbaum Decl. Ex. 1 at Exhibit E at 1.)

Accordingly, Defendant's first counterclaim, based on
Plaintiff's alleged repudiation of the Agreement by sending the
Notice of Termination, is predicated on his assertion that
Plaintiff issued a Notice of Termination based on "a purported
'default' by [Defendant] that did not exist." (Opp'n Br. 14).
Because Defendant's pleadings fail to show that Plaintiff
breached the Agreement, his anticipatory repudiation claim
fails. *Chatsworth Realty 344 LLC. v. Hudson Waterfront Co. A,
LLC.*, 2003 WL 1085888, at *6 (N.Y. Sup. Ct. Mar. 4, 2003)
("Given that the court has found no basis for a claim of breach
of the applicable agreements, this claim is found wanting."),
aff'd 309 A.D.2d 567 (1st Dep't 2003).And because only a party
who is not in breach of an agreement can bring a claim for
anticipatory repudiation, Defendant's claim fails for this
additional reason as well. See *DiFolco v. MSNBC Cable L.L.C.*,
831 F. Supp. 2d 634, 641 (S.D.N.Y. 2011) (anticipatory
repudiation excuses the non-breaching party from performance).

Defendant's third counterclaim is for fraud in the
inducement. Defendant contends that this cause of action must
survive because (i) he seeks rescission of the entire contract,

including the merger clause; (ii) the clause is too general to track the substance of the alleged misrepresentations; and (iii) the facts alleged to have been misrepresented were "peculiarly within" Plaintiff's knowledge.

Although "an omnibus statement that the written instrument embodies the whole agreement, or that no representations have been made" is insufficient to bar a claim of fraudulent inducement, here the Agreement's merger clause is specific enough to bar Defendant's reliance upon the alleged misrepresentations. *Mfrs. Hanover Tr. Co. v. Yanakas*, 7 F.3d 310, 315 (2d. Cir. 1993). In *Danann*, the New York Court of Appeals rejected a claim for fraudulent inducement where the merger clause contained a statement that the seller had "not made and does not make any representations as to the physical condition, rents, leases, expenses, operation, or any other matter or thing affecting or related to the aforesaid premises, except as herein specifically set forth, and the Purchaser hereby expressly acknowledges that no such representations have been made...." *Danann Realty Corp. v. Harris*, 5 N.Y.2d 317, 320 (1959); see also *Aetna Cas. & Sur. Co. v. Aniero Concrete Co.*, 404 F.3d 566, 576 (2d Cir. 2005) (there need not be a "precise identity between the misrepresentation and the particular disclaimer" as long as the "substance of the disclaimer

40

provisions tracks the substance of the alleged
misrepresentations"); *Psenicska v. Twentieth Century Fox Film
Corp.*, No. 07 Civ. 10972 (LAP), 2008 WL 4185752, at *6 (S.D.N.Y.
Sept. 3, 2008) (waiver of reliance on "any promises or
statements made by anyone about the nature of the Film or the
identity of any other Participants or persons involved in the
Film" sufficiently specific to sustain 12(b)(6) dismissal of
fraudulent inducement claims), aff'd, 409 F. App'x 368 (2d Cir.
2009).

And the "peculiar knowledge" exception cannot apply
here. (Opp'n Br. at 23-24.) The exception is "stringently
applied" when the contracting parties are sophisticated
companies or businessmen, because "the [Defendant] had a low
cost alternative such as insisting that the written contract
terms reflect any oral undertaking on a deal-breaking issue."
*SOL Grp. Mktg. Co. v. Lines*, No. 14 Civ. 9929 (SHS), 2016 WL
205444, at *5 (S.D.N.Y. Jan. 15, 2016) (dismissing fraud in the
inducement claim on 12(b)(6) motion) (internal quotations
omitted); *O.F.I. Imports Inc. v. Gen. Elec. Capital Corp.*, No.
15 Civ. 7231 (VEC), 2016 WL 5376208, at *6 (S.D.N.Y. Sept. 26,
2016) (exception applies only when a party takes "reasonable
steps to verify its counterparty's statements but is unable to
do so because the underlying information is impractically

41

expensive to obtain or solely within the control of the counterparty"); *Lazard Freres & Co. v. Protective Life Ins. Co.*, 108 F.3d 1531, 1543 (2d Cir. 1997) ("where, as here, a party has been put on notice of the existence of material facts which have not been documented and he nevertheless proceeds with a transaction without securing the available documentation or inserting appropriate language in the agreement for his protection, he may truly be said to have willingly assumed the business risk that the facts may not be as represented ... a party will not be heard to complain that he has been defrauded when it is his own evident lack of due care which is responsible for his predicament.") (internal quotations omitted).

Although Defendant argues that his level of sophistication is an issue for further discovery, he does not contest that he founded, and is the Chairman of, a structured investment fund for experienced investors. (Reisbaum Decl. Ex. 4 at Answer ¶ 3; Reisbaum Decl. Ex. 2 ¶ 12.) Nor does he deny that he was represented by real estate counsel in New York throughout the negotiation of the Agreement and afterwards. (Reisbaum Decl. Ex. 4 at Answer ¶ 11; Reisbaum Decl. Ex. 3 ¶ 8, Ex. M; see also Reisbaum Decl. Ex. 2 ¶ 3-4, 14.) Indeed, Defendant clearly did negotiate for, and obtain, benefits such as the right to a limited, thirty-day adjournment of the Closing Date. (Reisbaum

Decl. Ex. 1 at Ex. A, Rider to Agreement ¶ A.) He cannot disclaim reliance upon descriptions of the Building (regarding the number of units sold and a potential plan to increase prices) and the Unit (i.e., its prospective neighbors), and then claim to have been defrauded by statements he has already disclaimed.

Based on the conclusions set forth above, judgment for Plaintiff on the pleadings is granted and the Defendant's cross-motion is denied. For the reasons set forth, Defendant's second counterclaim, for declaratory judgment that he is entitled to the return of the Deposit, is dismissed.

In view of the Opinion in this action entered this date, the discovery motions are moot and dismissed. Enter judgment on notice.

It is so ordered.

**New York, NY**
**February 27, 2019**

_____
ROBERT W. SWEET
U.S.D.J.