USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 07/29/2019

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------X

28TH HIGHLINE ASSOCIATES, LLC,

Plaintiff,

-against-

IAIN ROACHE,

Defendant.

---------------------------------------------------------------X

**18-cv-01468 (VSB) (KHP)**

**REPORT & RECOMMENDATION**

**TO: VERNON S. BRODERICK, UNITED STATES DISTRICT JUDGE**

**FROM: KATHARINE H. PARKER, UNITED STATES MAGISTRATE JUDGE**

This case arises from a dispute about a deposit Defendant placed to purchase a luxury condominium unit and related properties from Plaintiff at a price in excess of $10 million. The transaction was documented in a contract with riders on December 22, 2015 (the "Agreement"). Per the Agreement, Defendant placed a 20 percent deposit in the amount of $2,113,000.00 in escrow. Defendant, who is a sophisticated businessman, did not close on the apartment, leading to his default. Plaintiff filed this action on February 19, 2018, alleging breach of contract and seeking $2,113,000 in compensatory damages (the amount of the deposit), interest, attorneys' fees, and costs. On May 4, 2018, Defendant filed a counterclaim alleging repudiation and fraud in the inducement, seeking the return of the deposit, as well as interest, attorneys' fees, and costs. The parties cross moved for judgement on the pleadings. On February 25, 2019, the Hon. Robert W. Sweet issued a declaratory judgment in favor of Plaintiff, upholding the validity of the Agreement between the parties and finding that Plaintiff

is entitled to the full deposit. *See 28th Highline Assocs., L.L.C. v. Roache,* No. 18 CIV. 1468, 2019 WL 917208 (S.D.N.Y. Feb. 25, 2019). Defendant has filed a Notice of Appeal.

Importantly, with respect to Plaintiff's entitlement to legal fees and costs, Judge Sweet noted in his Opinion that "the Agreement contained a one-way fee-shifting clause, which provided that if Defendant defaulted, he would be obligated to reimburse the Plaintiff . . . for any legal fees and disbursements it incurred in enforcing its rights thereunder. [The] provision also survives the termination of the agreement." *Id.* at *3 (citation omitted). The text from the Agreement is as follows:

> "[Defendant] shall be obligated to reimburse [Plaintiff] for any legal fees and disbursements incurred by [Plaintiff] in defending [Plaintiff's] rights under this Agreement, or in the event [Defendant] defaults under this Agreement beyond any applicable grace period, in canceling this Agreement or otherwise enforcing [Defendant's] obligations hereunder. The provisions of this Article shall survive closing of title or the termination of this Agreement."

(ECF No. 1-1 at 17.)

On March 6, 2019**,** Plaintiff moved for attorneys' fees and costs of $431,111.95 (which consists of $390,430.00 in fees and $40,681.95 in costs) pursuant to Judge Sweet's judgment in its favor. Defendant's opposition was originally due on March 20, 2019. Defendant's counsel asked to withdraw and requested that this matter be delayed for 60 days to allow Defendant time to retain new counsel and respond to Plaintiff's motion for attorneys' fees and costs. The Hon. George B. Daniels extended Defendant's deadline to respond to Plaintiff's motion to May 17, 2019. Defendant did not obtain new counsel or file an opposition to Plaintiff's motion by the deadline. Instead, in a *pro se* capacity, Defendant filed a letter with the Court on May 20, 2019 which contested the fees requested by Plaintiff. On June 7, 2019, Defendant filed another

letter with the Court requesting either a 60-day extension to respond to Plaintiff's motion for fees and costs or, alternatively, a stay pending the resolution of his appeal from Judge Sweet's judgment against him. This Court denied Plaintiff's request for a stay but granted Plaintiff additional time to file an opposition to the motion for fees. Defendant filed a letter opposing Plaintiff's motion on July 12, 2019. Plaintiff filed a reply and included additional invoices for the period from the original motion through June 2019, amounting to attorneys' fees of $26,299.50 and costs of $12,943.

For the reasons set forth below, this Court respectfully recommends that Plaintiff's motion be GRANTED and Plaintiff awarded $412,956.50 in attorneys' fees and $53,625.46 in costs.

## I. Legal Standard

As noted by Judge Sweet in his decision granting Plaintiff's motion for judgment on the pleadings, Plaintiff is entitled to its costs and fees incurred in this action pursuant to the fee-shifting provision in the parties' contract. *28th Highline*, 2019 WL 917208, at *3. Under New York law, fee shifting provisions in real estate contracts that authorize the award of attorneys' fees are enforceable. *Rai v. WB Imico Lexington Fee, LLC*, No. 09 CIV. 9586 (PGG), 2017 WL 4350567, at *5 (S.D.N.Y. June 28, 2017) (citing *Bacolitsas v. 86th & 3rd Owner*, LLC, No. 09 CIV. 7158 PKC 2013, WL 10620139, at *1 (S.D.N.Y. Apr. 1, 2013)), *aff'd*, 719 F. App'x 90 (2d Cir. 2018); *Universal Comic'n Network, Inc. v. 229 W. 28th Owner, LLC*, 85 A.D.3d 668, 670 (App. Div. 2011); *see Muckier v. Russell Miller, Inc.*, 1 F.3d 1306, 1313 (2d Cir. 1993) ("[W]here a contract authorizes an award of attorneys' fees, such an award becomes the rule rather than the exception."). The parties' Agreement contained a "one-way fee shifting clause, which provided

that if Defendant defaulted, he would be obligated to reimburse the Plaintiff [for] any legal fees and disbursements it incurred in enforcing its rights thereunder." *28th Highline Assocs.,* 2019 WL 917208, at *3.

A district court exercises "considerable discretion" in awarding attorneys' fees. *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. of Albany & Albany Cty. Bd. of Elections*, 522 F.3d 182, 190 (2d Cir. 2008); *see McDaniel v. Cty. of Schenectady*, 595 F.3d 411 (2d Cir. 2010). "The party seeking fees bears the burden of demonstrating that its requested fees are reasonable." *Wat Bey v. City of New York*, No. 01 CIV. 09406 (AJN), 2013 WL 12082743, at *32 (S.D.N.Y. Sept. 4, 2013) (quoting *Abel v. Town Sports Int'l, LLC*, No. 09-CV-10388 (DF), 2012 WL 6720919, at *26 (S.D.N.Y. Dec. 18, 2012)), *aff'd sub nom*., *Rivera v. City of New York*, 594 F. App'x 2 (2d Cir. 2014). Attorneys' fees are awarded by determining a presumptively reasonable fee, or "lodestar," reached by multiplying a reasonable hourly rate by the number of hours reasonably expended. *Id*. (citing *Millea v. Metro-North R. R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011)); *see Bergerson v. N.Y. State Office of Mental Health, Central N.Y. Psychiatric Ctr.*, 652 F.3d 277, 289-90 (2d Cir. 2011). When evaluating hourly rates, the Court looks at "what a reasonable, paying client would be willing to pay, given that such a party wishes to spend the minimum necessary to litigate the case effectively." *Bergerson,* 652 F.3d at 289 (internal quotation marks and citation omitted). The Court may also consider case-specific factors to adjust the fee. *See Arbor Hill*, 522 F.3d at 186 n.3 (listing case-specific factors to consider). The Second Circuit's "forum rule" generally requires use of "the hourly rates employed in the district in which the reviewing court sits in calculating the presumptively reasonable fee." *Id.* at 290 (internal quotation marks and citation omitted); *see also Restivo v. Hessemann*, 846 F.3d

547, 590 (2d Cir. 2017) (noting that rates are "generally [] the market rates prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation" (citation omitted)), *cert. denied*, 138 S. Ct. 644 (2018). The "forum rule" applies even where the fees requested are different than those prevailing in the districts where an attorney typically resides. *See Simmons v. New York City Transit Auth.*, 575 F.3d 170, 176–77 (2d Cir. 2009). The Court may also use its own experience and knowledge of rates charged in the community to assess the reasonableness of rates sought. *Bhungalia Family, LLC v. Agarwal*, 317 F. Supp. 3d 727, 739 (S.D.N.Y. 2018) (citing *Miele v. New York State Teamsters Conf. Pension & Ret. Fund*, 831 F.2d 407, 409 (2d Cir. 1987)).

When evaluating hours expended, courts must make "a conscientious and detailed inquiry into the validity of the representations that a certain number of hours were usefully and reasonably expended." *Haley v. Pataki*, 106 F.3d 478, 484 (2d Cir. 1997) (quoting *Lunday v. City of Albany*, 42 F.3d 131, 134 (2d Cir. 1994)). In determining whether hours are excessive, "the critical inquiry is whether, at the time the work was performed, a reasonable attorney would have engaged in similar time expenditures." *Samms v. Abrams*, 198 F. Supp. 3d 311, 322 (S.D.N.Y. 2016) (quoting *Grant v. Martinez*, 973 F.2d 96, 99 (2d Cir. 1992)). "Hours that are excessive, redundant, or otherwise unnecessary, are to be excluded . . . and in dealing with such surplusage, the court has discretion simply to deduct a reasonable percentage of the number of hours claimed as a practical means of trimming fat from a fee application." *Kirsch v. Fleet St., Ltd.*, 148 F.3d 149, 173 (2d Cir. 1998) (internal citations and quotation marks omitted); *accord Alicea v. City of New York,* 272 F. Supp. 3d 603, 608-09 (S.D.N.Y. 2017).

## II. Discussion

Plaintiff seeks attorneys' fees in the amount of $416,729.50 for work done by its counsel, Clarick Gueron Reisbaum LLP ("CGR"), in connection with this litigation. The following individuals from CGR billed time on this matter:

| **Biller** | **Total Hours** | **2018 Hours** | **2018 Hourly Rate** | **2019 Hours** | **2019 Hourly Rate** |
|---|---|---|---|---|---|
| Emily Reisbaum | 268.6 | 218.6 | $640 | 60.9 | $695 |
| Nicole Gueron | 17.9 | 17.9 | $640 | .4 | $695 |
| Ashleigh Hunt | 558.6 | 379.3 | $350 | 224.4 | $375 |
| Isaac Zaur | 2 | 2 | $535 | N/A | $535 |
| Courtney Milianes | .50 | .50 | $395 | N/A | $395 |
| Paralegals Nia Hall, Chante Williams, Tristan Armstrong | 17.7 | | $195 | | $195 |
| **TOTAL** | | | $390,430.00 | | $26,299.50 |

Emily Reisbaum was the partner in charge of this matter, but she was assisted by her partners Nicole Gueron and Isaac Zaur for discrete tasks. Ashleigh Hunt was the primary associate staffed on this matter, but associate Courtney Milianes assisted on a discrete task. Three paralegals also billed time. All of the lawyers working on the matter are highly credentialed and competent attorneys.

Ms. Reisbaum is a 1994 graduate of New York University School of Law and worked for five years at Debevoise & Plimpton LLP and four years at the United States Attorneys' Office for

the Southern District of New York before becoming a founding member of CGR. She determined the strategy for this matter, supervised attorneys and paralegals, liaised with the client, prepared for and participated in oral argument on the motion for judgment on the pleadings, and oversaw discovery.

Ms. Hunt is a 2015 graduate of Columbia Law School where she was a James Kent Scholar. She served as a Columbia Social Justice Fellow at a non-profit prior to joining CGR. She conducted discovery, drafted written discovery requests and responses, reviewed documents, and drafted motions and other submissions to this Court.

Ms. Gueron is a 1995 graduate of Yale Law School where she served as senior editor of the Yale Law Journal. She clerked for the Hon. Charles S. Haight in this District, worked in the United States Attorneys' Office for this District for eight years, and served for three years as Deputy Chief Trial Counsel to New York Attorney General Andrew Cuomo before becoming a founding partner of CGR. Ms. Gueron assisted Ms. Reisbaum by reviewing drafts of briefs and advising on litigation strategy.

Mr. Zaur is a 2007 graduate of the University of California, Berkeley, School of Law and worked for three years at Cravath, Swaine & Moore LLP before joining CGR. Ms. Milianes is a 2011 graduate of New York University School of Law. Mr. Zaur and Ms. Milianes helped on a discrete task when Ms. Reisbaum was away.

Finally, each of the three paralegals who worked on this matter are college graduates with relatively few years of experience.

***A. Rates***

This Court first evaluates the hourly rates charged. To start, the rates requested by CGR for its lawyers have been found to be reasonable in other cases/courts. In 2017, the Hon. Paul A. Engelmayer from this District found that the hourly rates charged by CGR of $395 for a sixth-year associate and $640 for partners were reasonable. *Benihana, Inc. v. Benihana of Tokyo, LLC*, No. 15 Civ. 7428 (PAE), 2017 WL 6551198, at *4-5 (S.D.N.Y. Dec. 22, 2017) (concerning rates for Mses. Milianes and Gueron); *see also Benihana, Inc. v. Benihana of Tokyo, LLC,* No. 14 Civ. 792 (PAE) (RLE), 2015 WL 13746660, at *3 (S.D.N.Y. Aug. 6, 2015) (finding that similar CGR attorney rates were reasonable in 2015), *adopted as modified on separate grounds*, No. 14 CIV. 792 (PAE), 2016 WL 3647638 (S.D.N.Y. June 29, 2016). Likewise, a New York Supreme Court referee recently found that partner rates of $535 and $640 per hour and associate rates of $350 per hour were appropriate in a fee application that included Mses. Gueron and Hunt. *Brummer v. Wey*, 2018 WL 3528213, at *2, *4 (N.Y. Sup. Ct. July 20, 2018).

This Court also notes that similar attorney rates have been approved in this District in other commercial litigation matters. *See, e.g., King Fook Jewellry Group Ltd. v. Jacob & Company Watches, Inc*., 14-cv-742, 2019 WL 2535928, *4 (S.D.N.Y. June 20, 2019) (noting that courts in this District have awarded rates of $500 to $700 per hour for partners in breach of contract litigation and other commercial disputes); *Bacolitsas*, 2013 WL 10620139, at *2 (finding rates from $295 for a junior associate to $750 for a partner for "experienced commercial litigators working . . . on a case involving the right to rescind a contract for the sale of a $3.4 million unit" were reasonable); *see also Vista Outdoor Inc. v. Reeves Family Tr*., No. 16 CIV. 5766, 2018 WL 3104631, at *5–6 (S.D.N.Y. May 24, 2018) (approving rates up to $1,260 for partners; collecting cases); *Weiwei Gao v. Sidhu*, No. 11 CIV. 2711 WHP JCF, 2013 WL 2896995,

at *6 (S.D.N.Y. June 13, 2013) (collecting cases); *Regulatory Fundamentals Group LLC v. Governance Risk Mgmt. Compliance, LLC*, No. 13-cv-2493 (KBF), 2014 WL 4792082, at *2 (S.D.N.Y. Sept. 24, 2014) (finding that New York district courts have approved rates for experienced law firm partners in the range of $500 to $800 per hour and for associates in the range of $200 to $450 per hour). These cases support the rates of $640 and $695 for the partners who worked on this case. A rate of $375 for Ms. Hunt, who has only four years' experience, is somewhat high. In 2018, a court awarded Ms. Hunt $350 per hour. *See Brummer*, 2018 WL 3528213 at *3-5. Associate rates typically increase as their experience grows; and, a year has passed since Ms. Hunt was awarded $350 per hour. This suggests that a modest increase from the rate is appropriate. And while it is true that Plaintiff actually paid the rates charged, indicating that that $375 is a rate that the market will bear, this fact alone is not dispositive to this Court's determination of the reasonableness of Ms. Hunt's rate charged for Ms. Hunt. *See Blum v. Stenson,* 465 U.S. 886, 892-896, 896 n.11 (1984); *Vista Outdoor*, 2018 WL 3104631, at *4 (noting that when a contract provides that in the event of litigation the losing party will pay the attorneys' fees of the prevailing party, courts will order the losing party to pay whatever amounts have been expended so long as they are not unreasonable (citing *F.H. Krear & Co. v. Nineteen Named Trustees*, 810 F.2d 1250, 1263 (2d Cir. 1987)); *In re Relativity Fashion, LLC,* 565 B.R. 50, 69 (Bankr. S.D.N.Y. 2017) (citing *Farbotko v. Clinton County*, 433 F.3d 204 (2d Cir. 2005)). This Court finds that an increase of five percent, to $367.50 per hour is more appropriate for one additional year of experience. Accordingly, a rate of $367.50 should be awarded for Ms. Hunt's time in 2019. The rate of $375 per hour is appropriate for Ms. Milianes, an eighth-year associate.

The paralegal rate of $195 per hour is also somewhat high compared to rates approved in this District for similarly-experienced paralegals. The three paralegals who worked on this matter are recent college graduates. Courts in this district typically award paralegal rates in the range of $75 to $150 per hour, with more experienced paralegals commanding higher rates. *Hollander Glass Texas, Inc. v. Rosen-Paramount Glass Co., Inc.*, 291 F.Supp. 3d 554, 562 (S.D.N.Y. 2018) (reducing paralegal rate to $75); *Euro Pac. Capital, Inc. v. Bohai Pharm. Grp. Inc.*, No. 15-cv-4410 (VM) (JLC), 2018 WL 1229842, at *9 (S.D.N.Y. Mar. 9, 2018) (reducing paralegal rate to $150; discussing paralegal rates generally); *Long v. HSBC USA, Inc.*, No. 14-cv-6233 (HBP), 2016 WL 4764939, at *11 (S.D.N.Y. Sept. 13, 2016) (finding rates of $100 to $150 for paralegals are reasonable). Here, the three paralegals had no relevant experience prior to joining CGR. Therefore, a rate of $100 is more appropriate for them given their relative inexperience.

To the extent Defendant complains that he did not agree to the rates, his complaint is without merit. Defendant entered into a contract agreeing to pay "reasonable attorneys' fees" without the right to approve the rates. The agreement was the product of months-long negotiation between sophisticated parties, and Defendant had counsel at the time. *28th Highline Assocs.,* 2019 WL 917208, at *7, *11. Thus, it is too late for him to complain now. Further, he has had an opportunity to contest the rates in connection with this motion, and this Court has evaluated whether the rates are consistent with those awarded in this District and reduced them as appropriate and reasonable. *See Terra Energy & Resources Technologies, Inc. v. Terralinna Pty. Ltd.*, No. 12 Civ. 1337 (KNF), 2014 WL 6632937, at *4 (S.D.N.Y. Nov. 24, 2014) (noting that courts determine the reasonableness of rates).

Defendant has offered the opinion of a "costs attorney" from the United Kingdom ("U.K.") who opines that the rates are too high. This opinion carries no weight, as it is based on U.K. litigation principles and not based on the law in this District.

***B. Hours***

The Court turns next to hours worked. Firstly, the matter was appropriately staffed, with partner hours representing about one-third of the total hours billed. In this Court's experience, this is a typical time allocation between partners and associates on a commercial litigation. This allocation of time indicates that work that could be done by less experienced and less expensive attorneys and paralegals was in fact given to them, thereby minimizing the costs for the client.

CGR's hours spent also resulted in a victory for Plaintiff. CGR obtained a judgment in Plaintiff's favor and defeated a cross-motion for judgment on the pleadings filed by Defendant. The strongly favorable results obtained by CGR support a finding that the hours billed were reasonable. *Hensley v. Eckerhart*, 461 U.S. 424, 435 (1983) ("Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee."); *Patterson v. Balsamico*, 440 F.3d 104, 123 (2d Cir. 2006) (same); *King Fook Jewellry Group Ltd.,* 2019 WL 2535928, *10 (recognizing that the degree of success obtained is the most critical factor in awarding attorneys' fees).

While it is true that considerable hours were spent in discovery, it appears this was due to Defendant's aggressive litigation tactics. Sixty percent of the work performed in the case was related to discovery and performed primarily by Ms. Hunt. The discovery included collection of 18,000 documents from seven custodians, review of over 2,000 documents,

production of documents, preparation for depositions, and reviewing Defendant's production of 3,000 pages of documents. Plaintiff's counsel engaged in numerous phone calls to meet and confer with Defendant's counsel about discovery, some of which lasted more than an hour and required written follow-up. Additionally, Plaintiff resisted two discovery motions concerning its responses to interrogatories, a dispute about the proper interpretation of a Court ruling on discovery, and a motion to quash two third-party subpoenas. Plaintiff was the prevailing party in the majority of discovery disputes brought to the Court for resolution. As Defendant's aggressive litigation tactics extended the length and breadth of discovery and the matter itself, the commensurate amount of time spent on resolving the matter is reasonable. *See Therapy Prod., Inc. v. Bissoon*, No. 07 Civ. 8696 DLC THK, 2010 WL 2404317, at *6 (S.D.N.Y. Mar. 31, 2010) (finding that hours expended were reasonable in light of losing party's actions and that prevailing party would have been saved the costs of disproving a factual assertion and theory of liability if losing party had been forthcoming in conceding facts that were later resolved on summary judgment), *adopted sub nom., Erchonia Corp. v. Bissoon*, No. 07 Civ. 8696 (DLC), 2010 WL 2541235 (S.D.N.Y. June 15, 2010).

Plaintiff's counsel represents that she reduced the amount of hours charged to Plaintiff where, in her discretion, Plaintiff should not be charged. For example, she represents that she charged for only one lawyer on a telephone call and reduced time for Ms. Hunt's research and letter writing where, in her estimation, the task took longer than warranted or than her client would expect. This is appropriate and has been taken into account when evaluating the hours spent. The Court also notes that Plaintiff's counsel billed in 1/10 hour increments, which results in a more accurate recording of time.

Defendant complains that Plaintiff's counsel overstaffed this matter. This Court disagrees. The matter was handled principally by one partner and one associate. That other attorneys may have contributed at discrete times does not lead the Court to conclude there was overstaffing. It is common for lawyers in a firm to consult another partner on strategy or utilize other lawyers when the primary lawyer is unavailable or otherwise overextended. Thus, it is not unreasonable to award Plaintiff the fees incurred for attorneys other than Mses. Reisbaum and Hunt. *Tackney v. WB Imico Lexington Fee, LLC,* No. 10 CIV. 2734 PGG, 2015 WL 1190096, at *6 (S.D.N.Y. Mar. 16, 2015) (finding two partners and one associate assigned to matter reasonable where one of the partners assisted with discrete tasks including strategizing and providing feedback); *Douyon v. NY Med. Health Care, P.C.*, 49 F. Supp. 3d 328, 350 (E.D.N.Y. 2014) ("[W]ork rendered by multiple attorneys is recoverable so long as the party seeking fees can show that the attorneys engaged in distinct tasks").

Defendant also complains that the fees awarded should be determined through arbitration. However, the parties did not agree to arbitrate this dispute. Therefore, there is no basis for the dispute to be submitted to arbitration. Defendant could have negotiated for an arbitration provision in the contract, but he did not.

To the extent Defendant claims that Plaintiff's counsel double billed, this Court find no evidence of this after carefully scrutinizing the time records. The Court finds the time records appropriately detailed and that the time spent on tasks is generally consistent with what this Court would expect for such tasks in its experience. Defendant's U.K. costs attorney opines that the time spent was exorbitant based on a litigation budget provided to Defendant by his counsel and U.K. litigation cost concepts. Here, again, Defendant's submission falls short of

demonstrating the time spent was unreasonable. To start, a budget for a litigation often underestimates the hours actually expended because of the vicissitudes of litigation. Second, U.K. litigation concepts have no applicability here. Based on its own experience litigating matters and supervising attorneys, the Court finds that the time charged was reasonable and not excessive. The Court notes that to the extent Defendant's counsel spent less time on discovery, the discovery burdens were disproportionate. Defendant had only his own records to search. By contrast, Plaintiff had seven custodians and was asked to search for broader categories of information than was Defendant.

***C. Revised Computation***

Based on the above, this Court finds that the fees awarded for paralegal time should be reduced by $2,090 to reflect a $100 rather than a $195 rate for the 22 hours billed ($4,290-$2,200) by CGR's paralegals. Likewise, the fees awarded for Ms. Hunt's time in 2019 should be reduced by $1,683 to reflect a $367.50 rather than a $375 rate for the 224.4 hours billed ($84,150 – $82,467). This results in a reduction of total fees from $416,729.50 to $412,956.50.

***D. Costs***

Plaintiff seeks $53,625.46 in costs incurred in connection with this matter. It is entitled to recover reasonable costs and disbursements under its contract with Defendant and because it is the prevailing party in this action, having achieved a judgment in its favor. Fed. R. Civ. P. 54(d)(1); *Therapy Prod., Inc.*, 2010 WL 2404317, at *4 ("These costs typically include . . . filing fees, fees for service of process, mailing costs, copying costs, transcription fees, and witness fees"). The question is whether the costs are reasonable and the type of costs normally charged to fee-paying client. *Tr. of N.Y.C. Dist. Council of Carpenters Pension Fund, Welfare*

*Fund, Annuity Fund v. B&L Moving & Installation, Inc.*, No. 16-CV-4734 (GBD) (JLC), 2017 WL 4277175, at *8 (S.D.N.Y. Sept. 26, 2017) (citing *Reichman v. Bonsignore, Brignati & Mazzotta P.C.*, 818 F.2d 278, 283 (2d Cir. 1987)), *adopted by*, 2018 WL 705316 (S.D.N.Y. Feb. 5, 2018).

Plaintiff's out-of-pocket expenses include costs incurred serving process on Defendant and third parties, charges from its ediscovery vendor for data collection, storage, searching, culling, conversion, and production, filing fees, postage, and printing costs. Because Defendant is located in Gibraltar, Plaintiff had to serve Defendant via the Hague Convention, which cost $2,850. The $400 filing fee is also a reimbursable cost. *King Fook Jewellry Group Ltd.,* 2019 WL 2535928, *11. The other costs for service of subpoenas on non-parties and postage and printing costs are also appropriate. *Id*. The bulk of the costs were incurred from Plaintiff's ediscovery vendor. Plaintiff has been paying a monthly fee of $7,536.64 to its vendor for hosting Plaintiff's data and has paid other amounts for data processing and production, with the total amount in excess of $40,000. While expensive, the amount is consistent with this Court's experience and knowledge of the costs of ediscovery vendors. And, there is no doubt that ediscovery vendor costs are and were billed to and paid by Plaintiff. Further, such costs are reimbursable under fee-shifting agreements like the one between the parties here. *Vista Outdoor,* 2018 WL 3104631, at *10-11; *Ambac Assur. Corp. v. Adelanto Pub. Util.*, 2013 WL 4615404, at *1, *7 (S.D.N.Y. Aug. 29, 2013). For all of the above reasons, the Court recommends that Plaintiff be awarded $53,625.46 in respect of its costs incurred in this action.

**CONCLUSION**

For the reasons set forth above, this Court respectfully recommends that Plaintiff be awarded $412,956.50 in attorneys' fees and $53,625.46 in costs.

Dated: New York, New York
July 29, 2019

Respectfully submitted,

KATHARINE H. PARKER
United States Magistrate Judge

**NOTICE**

**The Plaintiff shall have fourteen days and the Defendant shall have seventeen days from the service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure. See also Fed. R. Civ. P. 6(a), (d) (adding three additional days only when service is made under Fed. R. Civ. P. 5(b)(2)(C) (mail), (D) (leaving with the clerk), or (F) (other means consented to by the parties)).**

**If Plaintiff files written objections to this Report and Recommendation, Defendant may respond to the objections within seventeen days after being served with a copy. Fed. R. Civ. P. 72(b)(2). If Defendant files written objections to this Report and Recommendation, Defendant may respond to the objections within fourteen days after being served with a copy. Fed. R. Civ. P. 72(b)(2).**

**Any such objections shall be filed with the Clerk of the Court, with courtesy copies delivered to the chambers of the Honorable Vernon S. Broderick at the United States Courthouse, 40 Foley Square, New York, New York 10007, and to any opposing parties. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b). Any requests for an extension of time for filing objections must be addressed to Judge Broderick. The failure to file these timely objections will result in a waiver of those objections for purposes of appeal. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b); *Thomas v. Arn*, 474 U.S. 140 (1985).**