```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 12/7/2021
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
28TH HIGHLINE ASSOCIATES, LLC,

                          Plaintiff,

        -against-

IAIN ROACHE,

                         Defendant.

-----------------------------------------------------------------X

18-cv-01468 (VSB) (KHP)

**REPORT & RECOMMENDATION**

**TO:** VERNON S. BRODERICK, UNITED STATES DISTRICT JUDGE
**FROM:** KATHARINE H. PARKER, UNITED STATES MAGISTRATE JUDGE

      This case arises from a dispute about a deposit Defendant placed to purchase a luxury condominium unit and related properties from Plaintiff at a price in excess of $10 million. Plaintiff filed this action on February 19, 2018, alleging breach of contract and seeking $2,113,000 in compensatory damages (the amount of the deposit), interest, attorneys' fees, and costs.  On February 25, 2019, the Honorable Robert W. Sweet issued a declaratory judgment in favor of Plaintiff, upholding the validity of the Agreement between the parties and finding that Plaintiff is entitled to the full deposit.  *See 28th Highline Assocs., L.L.C. v. Roache,* No. 18 CIV. 1468, 2019 WL 917208 (S.D.N.Y. Feb. 25, 2019).  On March 25, 2019, Defendant filed a Notice of Appeal, but the Second Circuit affirmed Judge Sweet on September 15, 2020. *See 28th Highline Assocs., L.L.C. v. Roache,* 2020 WL 5523497 (2d Cir. Sept. 15, 2020).

On March 6, 2019, Plaintiff filed its first motion for attorneys' fees and costs in the amount of $431,111.95.  The undersigned recommended that Plaintiff's motion be granted[1] (ECF No. 86.) and the report and recommendation was adopted in its entirety.  (ECF No. 87.)

Before the Court is Plaintiff's second motion for attorneys' fees and costs it incurred in connection with Defendant's appeal.  (ECF No. 88.)  The Defendant, proceeding *pro se*, did not respond to this motion, nor file an Opposition.  For the following reasons, the Court recommends that the Plaintiff be awarded attorneys' fees and costs in the amount of $69,990.91.

## Brief Background about Entitlement to Legal Fees

With respect to Plaintiff's entitlement to legal fees and costs, Judge Sweet noted in his prior Opinion that "the Agreement contained a one-way fee-shifting clause, which provided that if Defendant defaulted, he would be obligated to reimburse the Plaintiff . . . for any legal fees and disbursements it incurred in enforcing its rights thereunder.  [The] provision also survives the termination of the agreement."  *See 28th Highline Assocs., L.L.C. v. Roache*, No. 18 CIV. 1468, 2019 WL 917208 at *3 (S.D.N.Y. Feb. 25, 2019).  The text from the Agreement is as follows:

> "[Defendant] shall be obligated to reimburse [Plaintiff] for any legal fees and disbursements incurred by [Plaintiff] in defending [Plaintiff's] rights under this Agreement, or in the event [Defendant] defaults under this Agreement beyond any applicable grace period, in canceling this Agreement or otherwise enforcing [Defendant's] obligations hereunder. The provisions of this Article

---

[1] Plaintiff's first fee application was granted and adopted by Judge Sweet on September 23, 2020. *See generally 28th Highline Assocs., LLC v. Roache,* 2019 WL 5659465 (S.D.N.Y. Sept. 23, 2020).  The only modifications made by the undersigned to Plaintiff's first fee request was to slightly modify an associate's 2019 billing rate and to discount the rate billed by paralegals from $195/hour to $100/ hour. *Id.* at *4.

shall survive closing of title or the termination of this Agreement."
(ECF No. 1-1 at 17.)

## I.     Legal Standard

Under New York law, fee shifting provisions in real estate contracts that authorize the award of attorneys' fees are enforceable.  *Rai v. WB Imico Lexington Fee, LLC*, No. 09 CIV. 9586 (PGG), 2017 WL 4350567, at *5 (S.D.N.Y. June 28, 2017) (citing *Bacolitsas v. 86th & 3rd Owner, LLC*, No. 09 CIV. 7158 PKC  2013, WL 10620139, at *1 (S.D.N.Y. Apr. 1, 2013)), *aff'd*, 719 F. App'x 90 (2d Cir. 2018); *Universal Comic'n Network, Inc. v. 229 W. 28th Owner, LLC*, 85 A.D.3d 668, 670 (App. Div. 2011); *see Muckier v. Russell Miller, Inc.*, 1 F.3d 1306, 1313 (2d Cir. 1993) ("[W]here a contract authorizes an award of attorneys' fees, such an award becomes the rule rather than the exception.").  Here, the parties' Agreement contained a "one-way fee shifting clause, which provided that if Defendant defaulted, he would be obligated to reimburse the Plaintiff [for] any legal fees and disbursements it incurred in enforcing its rights thereunder." *28th Highline Assocs.,* 2019 WL 917208, at *3.

A district court exercises "considerable discretion" in awarding attorneys' fees.  *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. of Albany & Albany Cty. Bd. of Elections*, 522 F.3d 182, 190 (2d Cir. 2008); *see McDaniel v. Cty. of Schenectady*, 595 F.3d 411 (2d Cir. 2010). "The party seeking fees bears the burden of demonstrating that its requested fees are reasonable."  *Wat Bey v. City of New York*, No. 01 CIV. 09406 (AJN), 2013 WL 12082743, at *32 (S.D.N.Y. Sept. 4, 2013) (quoting *Abel v. Town Sports Int'l, LLC*, No. 09-CV-10388 (DF), 2012 WL 6720919, at *26 (S.D.N.Y. Dec. 18, 2012)), *aff'd sub nom.*, *Rivera v. City of New York*, 594 F. App'x 2 (2d Cir. 2014).  Attorneys' fees are awarded by determining a presumptively reasonable

3

fee, or "lodestar," reached by multiplying a reasonable hourly rate by the number of hours reasonably expended. *Id*. (citing *Millea v. Metro-North R. R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011)); *see Bergerson v. N.Y. State Office of Mental Health, Central N.Y. Psychiatric Ctr.*, 652 F.3d 277, 289-90 (2d Cir. 2011).  When evaluating hourly rates, the Court looks at "what a reasonable, paying client would be willing to pay, given that such a party wishes to spend the minimum necessary to litigate the case effectively." *Bergerson,* 652 F.3d at 289 (internal quotation marks and citation omitted).  The Court may also consider case-specific factors to adjust the fee. *See Arbor Hill*, 522 F.3d at 186 n.3 (listing case-specific factors to consider).  The Second Circuit's "forum rule" generally requires use of "the hourly rates employed in the district in which the reviewing court sits in calculating the presumptively reasonable fee." *Id.* at 290 (internal quotation marks and citation omitted); *see also Restivo v. Hessemann*, 846 F.3d 547, 590 (2d Cir. 2017) (noting that rates are "generally [] the market rates prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation" (citation omitted)), *cert. denied*, 138 S. Ct. 644 (2018).  The "forum rule" applies even where the fees requested are different than those prevailing in the districts where an attorney typically resides. *See Simmons v. New York City Transit Auth.*, 575 F.3d 170, 176–77 (2d Cir. 2009).  The Court may also use its own experience and knowledge of rates charged in the community to assess the reasonableness of rates sought. *Bhungalia Family, LLC v. Agarwal*, 317 F. Supp. 3d 727, 739 (S.D.N.Y. 2018) (citing *Miele v. New York State Teamsters Conf. Pension & Ret. Fund*, 831 F.2d 407, 409 (2d Cir. 1987)).

When evaluating hours expended, courts must make "a conscientious and detailed inquiry into the validity of the representations that a certain number of hours were usefully and

reasonably expended." *Haley v. Pataki*, 106 F.3d 478, 484 (2d Cir. 1997) (quoting *Lunday v. City of Albany*, 42 F.3d 131, 134 (2d Cir. 1994)). In determining whether hours are excessive, "the critical inquiry is whether, at the time the work was performed, a reasonable attorney would have engaged in similar time expenditures." *Samms v. Abrams*, 198 F. Supp. 3d 311, 322 (S.D.N.Y. 2016) (quoting *Grant v. Martinez*, 973 F.2d 96, 99 (2d Cir. 1992)). "Hours that are excessive, redundant, or otherwise unnecessary, are to be excluded . . . and in dealing with such surplusage, the court has discretion simply to deduct a reasonable percentage of the number of hours claimed as a practical means of trimming fat from a fee application." *Kirsch v. Fleet St., Ltd.*, 148 F.3d 149, 173 (2d Cir. 1998) (internal citations and quotation marks omitted); *accord Alicea v. City of New York,* 272 F. Supp. 3d 603, 608-09 (S.D.N.Y. 2017).

II.     Discussion

Plaintiff now seeks attorneys' fees in the amount of $63,045.00 for work done by its counsel, Clarick Gueron Reisbaum LLP ("CGR"), in connection with the appeal in this litigation. The following individuals from CGR billed time on this matter:

| Biller | Total Hours | 2019 Hours | 2019 Hourly Rate | 2020 Hours | 2020 Hourly Rate |
|---|---|---|---|---|---|
| Emily Reisbaum | 31.5 | .8 | $695 | 30.7 | $710 |
| Nicole Gueron | 2.7 | 2.7 | $695 | 0 | $695 |
| Ashleigh Hunt | 89.2 | 59.9 | $375 | 29.3 | $375 |
| Allison Pincus | 5.2 | 5.2 | $350 | | $350 |
| Paralegals Muriel Leung | 25.2 | | $100[2] | 25.2 | $100 |

---

[2] According to Plaintiff's submissions, the paralegals rates is $195 per hour. However, as noted *supra*, Plaintiff adjusted its fee request to reflect a rate of $100 per hour based on the undersigned's prior report and recommendation. (*See* ECF No. 86.)

| | | | | | |
|---|---|---|---|---|---|
| and Gabriel Valderrama | | | | | |
| **TOTALS =** | 153.8 Total hours | | | | $63,045.00 |

Emily Reisbaum was the primary partner working on this matter, but she was assisted by her partner Nicole Gueron.  Ashleigh Hunt and Allison Pincus were the primary associates staffed on this matter.  Additionally, two paralegals also billed time.  All of the lawyers working on the matter are highly credentialed and competent attorneys.

Ms. Reisbaum is a 1994 graduate of New York University School of Law and worked for five years at Debevoise & Plimpton LLP and four years at the United States Attorneys' Office for the Southern District of New York before becoming a founding member of CGR.  (ECF No. 89 at p. 10.)  She determined the strategy for this matter, supervised attorneys and paralegals, liaised with the client, prepared for and participated in oral argument before the Second Circuit and revised Ms. Hunt's draft.  (ECF No. 89 at pp. 10-11.)

Ms. Gueron is a 1995 graduate of Yale Law School where she served as senior editor of the Yale Law Journal.  (*Id*. at 11.)  She clerked for the Hon. Charles S. Haight in this District, worked in the United States Attorneys' Office for this District for eight years, and served for three years as Deputy Chief Trial Counsel to New York Attorney General Andrew Cuomo before becoming a founding partner of CGR.  (*Id*.)  Ms. Gueron assisted Ms. Reisbaum by reviewing drafts of briefs and advising on litigation strategy.  (*Id*.)

Ms. Hunt is a 2015 graduate of Columbia Law School where she was a James Kent Scholar.  She served as a Columbia Social Justice Fellow at a non-profit prior to joining CGR.  (*Id*.

6

at 11.)  She conducted discovery, drafted written discovery requests and responses, reviewed documents, and drafted motions and other submissions to this Court.  (*Id*.)

Ms. Pincus is a 2017 graduate of the University of California, Berkeley, School of Law and clerked for the Honorable Stefan R. Underhill of the United States District Court for the District of Connecticut before joining CGR.  (*Id*.)  Ms. Pincus primarily assisted Ms. Hunt in researching and drafting appellate papers.  (*Id*.)

Finally, each of the paralegals who worked on this matter are recent college graduates with relatively few years of experience.  (*Id*. at p. 12.)

### A. Rates

This Court first evaluates the hourly rates charged.  To start, the rates requested by CGR for its lawyers have been found to be reasonable in other cases/courts.  In 2017, the Hon. Paul A. Engelmayer from this District found that the hourly rates charged by CGR of $395 for a sixth-year associate and $640 for partners were reasonable.  *Benihana, Inc. v. Benihana of Tokyo, LLC*, No. 15 Civ. 7428 (PAE), 2017 WL 6551198, at *4-5 (S.D.N.Y. Dec. 22, 2017) (concerning rates for Mses. Milianes and Gueron); *see also Benihana, Inc. v. Benihana of Tokyo, LLC,* No. 14 Civ. 792 (PAE) (RLE), 2015 WL 13746660, at *3 (S.D.N.Y. Aug. 6, 2015) (finding that similar CGR attorney rates were reasonable in 2015), *adopted as modified on separate grounds*, No. 14 CIV. 792 (PAE), 2016 WL 3647638 (S.D.N.Y. June 29, 2016).  Likewise, a New York Supreme Court referee recently found that partner rates of $535 and $640 per hour and associate rates of $350 per hour were appropriate in a fee application that included Mses. Gueron and Hunt. *Brummer v. Wey*, 2018 WL 3528213, at *2, *4 (N.Y. Sup. Ct. July 20, 2018).

This Court also notes that similar attorney rates have been approved in this District in other commercial litigation matters. *See, e.g., King Fook Jewellry Group Ltd. v. Jacob & Company Watches, Inc.*, 14-cv-742, 2019 WL 2535928, *4 (S.D.N.Y. June 20, 2019) (noting that courts in this District have awarded rates of $500 to $700 per hour for partners in breach of contract litigation and other commercial disputes); *Bacolitsas*, 2013 WL 10620139, at *2 (finding rates from $295 for a junior associate to $750 for a partner for "experienced commercial litigators working . . . on a case involving the right to rescind a contract for the sale of a $3.4 million unit" were reasonable); *see also Vista Outdoor Inc. v. Reeves Family Tr.*, No. 16 CIV. 5766, 2018 WL 3104631, at *5–6 (S.D.N.Y. May 24, 2018) (approving rates up to $1,260 for partners; collecting cases); *Weiwei Gao v. Sidhu*, No. 11 CIV. 2711 WHP JCF, 2013 WL 2896995, at *6 (S.D.N.Y. June 13, 2013) (collecting cases); *Regulatory Fundamentals Group LLC v. Governance Risk Mgmt. Compliance, LLC*, No. 13-cv-2493 (KBF), 2014 WL 4792082, at *2 (S.D.N.Y. Sept. 24, 2014) (finding that New York district courts have approved rates for experienced law firm partners in the range of $500 to $800 per hour and for associates in the range of $200 to $450 per hour). These cases support the rates of $695 and $710 for the partners who worked on this case. In 2018, a court awarded Ms. Hunt $350 per hour. *See Brummer*, 2018 WL 3528213 at *3-5. Associate rates typically increase as their experience grows; and, three years have passed since Ms. Hunt was awarded $350 per hour. This suggests that her increase in rates from $375 per hour (in 2019) to $410 per hour (in 2020) are appropriate. Additionally, the rate of Allison Pincus of $350 per hour is appropriate for a four-year associate. *See Brummer*, 2018 WL 3528213 at *3-5.

As previously noted, the paralegal rate of $195 per hour is high compared to rates approved in this District for similarly experienced paralegals. The two paralegals who worked on this matter are recent college graduates. Courts in this district typically award paralegal rates in the range of $75 to $150 per hour, with more experienced paralegals commanding higher rates. *Hollander Glass Texas, Inc. v. Rosen-Paramount Glass Co., Inc.*, 291 F.Supp. 3d 554, 562 (S.D.N.Y. 2018) (reducing paralegal rate to $75); *Euro Pac. Capital, Inc. v. Bohai Pharm. Grp. Inc.*, No. 15-cv-4410 (VM) (JLC), 2018 WL 1229842, at *9 (S.D.N.Y. Mar. 9, 2018) (reducing paralegal rate to $150; discussing paralegal rates generally); *Long v. HSBC USA, Inc.*, No. 14-cv-6233 (HBP), 2016 WL 4764939, at *11 (S.D.N.Y. Sept. 13, 2016) (finding rates of $100 to $150 for paralegals are reasonable). Here, the two paralegals had no relevant experience prior to joining CGR and were recent graduates. Consistent with my prior recommendation, the Court recommends a rate of $100 per hour given their relative inexperience.

### B. Hours

The Court turns next to hours worked. The majority of work was performed by associates and paralegals, whose billed time of 119.6 hours accounts for approximately 75% of CGR's total hours. (Reisbaum Dec. ¶ 10; Ex. 2.) This allocation of time indicates that work that could be done by less experienced and less expensive attorneys and paralegals was in fact given to them, thereby minimizing the costs for the client.

CGR's hours spent also resulted in a victory for Plaintiff. CGR successfully defended against Defendant's appeal. The strongly favorable results obtained by CGR support a finding that the hours billed were reasonable. *Hensley v. Eckerhart*, 461 U.S. 424, 435 (1983) ("Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory

fee."); *Patterson v. Balsamico*, 440 F.3d 104, 123 (2d Cir. 2006) (same); *King Fook Jewellry Group Ltd.,* 2019 WL 2535928, *10 (recognizing that the degree of success obtained is the most critical factor in awarding attorneys' fees).

Most billed hours reflect research and drafting the appeal brief in August and September of 2019 and preparing for and making oral argument in September of 2020. (Reisbaum Dec. ¶¶ 5-9, 11-12; Ex. 1-2.)  Some hours were also expended making a motion to dismiss the appeal when Defendant failed to file a timely Appendix.  (*Id*. at ¶ 11.)

The Court finds the time records appropriately detailed and that the time spent on tasks is generally consistent with what this Court would expect for such tasks in its experience.  Based on its own experience litigating matters and supervising attorneys, the time charged was reasonable and not excessive.

### C. Costs

Plaintiff seeks $6,945.91 in costs incurred in connection with this matter.  It is entitled to recover reasonable costs and disbursements under its contract with Defendant and because it is the prevailing party in this action, having achieved a judgment in its favor.  Fed. R. Civ. P. 54(d)(1); *Therapy Prod., Inc.*, 2010 WL 2404317, at *4 ("These costs typically include . . . filing fees, fees for service of process, mailing costs, copying costs, transcription fees, and witness fees").  The question is whether the costs are reasonable and the type of costs normally charged to fee-paying client.  *Tr. of N.Y.C. Dist. Council of Carpenters Pension Fund, Welfare Fund, Annuity Fund v. B&L Moving & Installation, Inc.*, No. 16-CV-4734 (GBD) (JLC), 2017 WL 4277175, at *8 (S.D.N.Y. Sept. 26, 2017) (citing *Reichman v. Bonsignore, Brignati & Mazzotta P.C.*, 818 F.2d 278, 283 (2d Cir. 1987)), *adopted by*, 2018 WL 705316 (S.D.N.Y. Feb. 5, 2018).

Plaintiff's out-of-pocket expenses include costs incurred for postage and vendor costs associated with printing and binding its brief and appendix on appeal, as well as charges from its ediscovery vendor for data collection, storage, searching, culling, conversion, and production.  (ECF No. 89 at p. 17.)  The bulk of the costs were incurred from Plaintiff's appellate vendor costs associated with printing and binding its brief and supplemental appendix on appeal, as well as postage of all hard copies of motions and other papers to Defendant who is located in France, which comes to a total amount of $5,017.07. (*Id*.)   Additionally, Plaintiff incurred reasonable costs from his ediscovery vendor.  Total storage costs from August 2019 through August 2020 amounted to $1,761.12.  These amounts are consistent with this Court's experience and knowledge of the costs of ediscovery vendors.  And, there is no doubt that ediscovery vendor costs are and were billed to and paid by Plaintiff.  Further, such costs are reimbursable under fee-shifting agreements like the one between the parties here.  *Vista Outdoor,* 2018 WL 3104631, at *10-11; *Ambac Assur. Corp. v. Adelanto Pub. Util.*, 2013 WL 4615404, at *1, *7 (S.D.N.Y. Aug. 29, 2013).  For all of the above reasons, the Court recommends that Plaintiff be awarded $6,945.91 in respect of its costs incurred in this action.

## CONCLUSION

For the reasons set forth above, this Court respectfully recommends that Plaintiff be awarded $63,045.00 in attorneys' fees and $6,945.91 in costs.

Dated: New York, New York  
      December 7, 2021

Respectfully submitted,

_____  
KATHARINE H. PARKER  
United States Magistrate Judge

## NOTICE

**The Plaintiff shall have fourteen days and the Defendant shall have seventeen days from the service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure. See also Fed. R. Civ. P. 6(a), (d) (adding three additional days only when service is made under Fed. R. Civ. P. 5(b)(2)(C) (mail), (D) (leaving with the clerk), or (F) (other means consented to by the parties)).**

**If Plaintiff files written objections to this Report and Recommendation, Defendant may respond to the objections within seventeen days after being served with a copy. Fed. R. Civ. P. 72(b)(2). If Defendant files written objections to this Report and Recommendation, Defendant may respond to the objections within fourteen days after being served with a copy. Fed. R. Civ. P. 72(b)(2).**

**Any such objections shall be filed with the Clerk of the Court, with courtesy copies delivered to the chambers of the Honorable Vernon S. Broderick at the United States Courthouse, 40 Foley Square, New York, New York 10007, and to any opposing parties. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b). Any requests for an extension of time for filing objections must be addressed to Judge Broderick. The failure to file these timely objections will result in a waiver of those objections for purposes of appeal. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b); *Thomas v. Arn*, 474 U.S. 140 (1985).**